UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY MUELLER, et al.,                    No. 22-cv-11448

    Plaintiffs,                    Hon. Mark A. Goldsmith

v.

OXFORD COMMUNITY SCHOOL
DISTRICT, et al.,

    Defendants.

---

## DEFENDANT ACME SHOOTING GOODS, LLC'S MOTION TO DISMISS

Defendant Acme Shooting Goods, LLC, through its attorneys, moves for dismissal of this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support of this motion, Acme relies on the attached brief.

Pursuant to Local Rule 7.1(a) and the Court's practice guidelines, the undersigned certifies that he attempted to obtain concurrence in the relief sought. Opposing counsel declined to concur.

Dated: September 6, 2022                    Respectfully submitted,

                                        */s/ Donovan S. Asmar*
                                        Thomas J. Rheaume, Jr. (P74422)
                                        Donovan S. Asmar (P77951)
                                        Bodman PLC
                                        201 W. Big Beaver Road, Suite 500
                                        Troy, MI  48084
                                        (248) 743-6000
                                        Attorneys for Defendant

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY MUELLER, et al.,

      Plaintiffs,                No. 22-cv-11448

v.                          Hon. Mark A. Goldsmith

OXFORD COMMUNITY SCHOOL
DISTRICT, et al.,

      Defendants.

---

**BRIEF IN SUPPORT OF DEFENDANT ACME SHOOTING GOODS, LLC'S MOTION TO DISMISS**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................................iii

QUESTIONS PRESENTED ............................................................................v

CONTROLLING OR MOST APPROPRIATE AUTHORITY...........................vi

INTRODUCTION ......................................................................................1

STATEMENT OF FACTS.............................................................................2

   A. Acme follows all laws when selling firearms ...........................................2

   B. James Crumbley purchases a firearm......................................................3

   C.  Plaintiffs sue Acme for damages arising out of E.C.'s criminal acts...............5

STANDARD OF REVIEW.............................................................................7

ARGUMENT...............................................................................................8

   I. Plaintiffs' negligence and public nuisance claims must be dismissed because the PLCAA prohibits such claims against firearms sellers like Acme...........8

      A. The PLCAA prohibits civil lawsuits against firearms sellers for damages arising from the criminal misuse of firearms by third parties....................8

      B. The PLCAA applies here and bars plaintiffs' negligence and public nuisance claims......................................................................................11

      C. The PLCAA's predicate exception does not apply to plaintiffs' negligence claim.....................................................................................13

   II. Plaintiffs' negligent entrustment claim must be dismissed because it fails to state a plausible claim for relief...........................................................17

      A. Dismissal is required when the plaintiff fails to state a claim upon which relief can be granted....................................................................17

      B. Plaintiffs have failed to plead sufficient facts to establish a negligent entrustment claim under Michigan law........................................................18

i

C.  Plaintiffs have failed to plead sufficient facts to establish a negligent entrustment claim under the PLCAA. ..........................................................23

CONCLUSION ..............................................................................................24

# INDEX OF AUTHORITIES

## Cases

*16630 Southfield Ltd. P'ship v. Flagstar Bank*, 727 F.3d 502 (6th Cir. 2013) . 17, 22

*Allstate Ins Co v. Freeman*, 408 N.W.2d 153, 157 (Mich. Ct. App. 1987) ........... 18

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................................................................. iv, v, 1, 7, 17, 18, 22

*Bannerman v. Mt. State Pawn, Inc.*, Civil Action No. 3:10-CV-46, 2010 U.S. Dist. LEXIS 145292 (N.D.W. Va. Nov. 5, 2010) ................................................. 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...................................................................................... iv, v, 1, 7

*Buczkowski v. McKay*, 490 N.W.2d 330, 335 (Mich. 1992) ............................... 19

*Chiapperini v. Gander Mountain Co., Inc.*, 13 N.Y.S.3d 777, 780 (Sup. Ct. 2014) ..................................................................................................... 21, 22

*City of New York v. Beretta*, 524 F.3d 384, 394-95 (2d Cir. 2008) ...................... 8

*Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 321 (Mo. 2016) ...................... 11, 23

*Estate of Charlot v. Bushmaster Firearms, Inc.*, 628 F. Supp. 2d 174, 180 (D.D.C. 2009) ..................................................................................................... 2

*Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 386 (Alaska 2013) ..................................................................................................... 11, 12

*Fredericks v. GM Corp.*, 311 N.W.2d 725, 727 (Mich. 1981) ................ 18, 19, 22

*Ileto v. Glock, Inc.*, 565 F.3d 1126, 1132 (9th Cir. 2009) ............ v, 9, 11, 12, 13,14

*In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) ...................... 3

*Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 44 (D.D.C. 2013) ........ 10, 12

*Midgette v. Wal-Mart Stores, Inc.*, 317 F. Supp. 2d 550, 567 (E.D. Pa. 2004) ...... 19

*New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046, 1051 (6th Cir. 2011) .. 17

*Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1219 (D. Colo. 2015) ................................................................................................... 10, 11, 19

*Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 420 (6th Cir. 2001) ..................... 7

*Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296 (1983) ..................... 12

*Sambrano v. Savage Arms, Inc.*, 338 P.3d 103, 105 (N.M. Ct. App. 2014) ........... 9

*Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 278 (Conn. 2019) ......... 23

*Travieso v. Glock Inc.*, 526 F. Supp. 3d 533, 536 (D. Ariz. 2021) ..................... 10

*Watermark Senior Living Ret. Communities, Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 425-26 (6th Cir. 2018) ..................................................... 4

**Statutes**

15 U.S.C. § 7901 ......................................................................................... 8, 9

15 U.S.C. § 7902 ......................................................................................... 9, 10

15 U.S.C. § 7903 ....................................................................................... passim

18 U.S.C. §3 ............................................................................................... 13, 14

18 U.S.C §4 ............................................................................................... 13. 14

18 U.S.C. § 922(a)(6) ................................................................................ 14, 15

18 U.S.C. § 922(m) ................................................................................... 14, 15

18 U.S.C. §922(t) ........................................................................................... 16

18 U.S.C. §922(x) ........................................................................................... 16

18 U.S.C. §923(g) ........................................................................................... 16

18 U.S.C. § 924(a)(3) ................................................................................ 14, 15

M.C.L. § 600.3801 ........................................................................................... 14

M.C.L. § 750.234f ...................................................................................... 13, 20

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................ passim

## QUESTIONS PRESENTED

### I.

**Under the Protection of Lawful Commerce in Arms Act (PLCAA), 15 U.S.C. §§ 7901-7903, firearms dealers cannot be held liable under theories of negligence or public nuisance for damages arising out of the criminal misuse of firearms by third parties. Plaintiffs filed this lawsuit against Acme, a firearms dealer, for damages arising out of E.C.'s criminal misuse of a firearm purchased at Acme. Does the PLCAA bar plaintiffs' negligence and public nuisance claims?**

Defendant Acme answers, "yes."

Plaintiffs Matthew and Mary Mueller, as Co-Next Friends for their son E.M., answer, "no."

### II.

**Does plaintiffs' complaint fail to allege sufficient factual content from which the Court can infer that Acme is subject to liability under a negligent entrustment theory, as required under *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and its companion case, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)?**

Defendant Acme answers, "yes."

Plaintiffs Matthew and Mary Mueller, as Co-Next Friends for their son E.M., answer, "no."

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

- Fed. R. Civ. P. 12(b).

- 15 U.S.C. §§ 7901-7903

- *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009).

- *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

- *Fredericks v. GM Corp.*, 311 N.W.2d 725, 727 (Mich. 1981).

- *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1135-36 (9th Cir. 2009)

## INTRODUCTION

This lawsuit arises out of a horrific shooting at Oxford High School perpetrated by E.C, a student at the school. E.C. used his father, James Crumbley's, firearm when he committed the shooting. Because James purchased the firearm from Acme Shooting Goods, LLC, plaintiffs bring this lawsuit against Acme attempting to hold it liable for E.C.'s criminal acts. The Protection of Lawful Commerce in Arms Act (PLCAA), 15 U.S.C. §§ 7901-7903, prohibits them from doing so.

The PLCAA protects federally-licensed firearms dealers like Acme from lawsuits, just like this one, for damages arising from the criminal misuse of firearms by third parties. More specifically, the PLCAA mandates dismissal of common-law tort claims unless a statutory exception applies. This broad preemptive provision bars plaintiffs' negligence and public nuisance claims.

Although the PLCAA carves out an exception for negligent entrustment claims, plaintiffs' claim still fails because their complaint is devoid of factual allegations which, if true, justify application of this exception. Plaintiffs allege that Acme knew or had reason to know that the sale of the firearm to James would result in his son's use of the firearm. But the complaint identifies no facts that would have put Acme on such notice. The plausibility standard articulated in *Twombly* and *Iqbal* demands more than a "sheer possibility" that Acme acted unlawfully. The complaint here does not cross the line of possibility, let alone enter the realm of plausibility.

1

Congress has made clear that no matter how tragic the consequences of a gun crime may be—and the Oxford High shooting is unquestionably tragic—firearms sellers cannot, except in narrow circumstances, be held responsible for the acts of the criminals who perpetrate those crimes. *Estate of Charlot v. Bushmaster Firearms, Inc.*, 628 F. Supp. 2d 174, 180 (D.D.C. 2009) (citing 15 U.S.C. § 7901(a)(5)). Plaintiffs have failed to allege facts that would support a theory of recovery that does not fall within the preemptive scope of the PLCAA. Therefore, Acme respectfully requests that this Court dismiss plaintiffs' claims against it with prejudice.

## STATEMENT OF FACTS

### A.    Acme follows all laws when selling firearms

Acme is a federally licensed firearms ("FFL") dealer located in Oxford, Michigan.[1] As a FFL, Acme complies with federal regulations applicable to firearms dealers. Acme educates its customers through various notices posted throughout the store, including notices regarding youth-handgun safety and the national "Don't Lie for the Other Guy" campaign to educate would-be straw purchasers of the penalties of participating in straw sales.[2]

---

[1] Complaint, ECF No. 1, PageID.7, 14 at ¶¶15, 59.

[2] **Exhibit 1**, Preliminary Examination Transcript Vol. 2 in *People v James Robert Crumbley and Jennifer Lynn Crumbley*, 52nd District Court – Division 3, Case Nos. 21-006651-2 and 2022-279989-90-FH at 83-84. The preliminary examination transcript may be considered because it is referenced and quoted in plaintiffs'

Acme also follows a specific and detailed process for gun sales.[3] That process includes: obtaining the customer's driver's license and making copies; having the customer complete a Form 4473 Firearms Transaction Record; running an NICS online background check through the ATF (Bureau of Alcohol, Tobacco, Firearms and Explosives) or FBI; providing a trigger lock or cable lock; providing a trigger-lock statement;[4] and giving the customer a pamphlet on the ATF Youth Handgun Safety Act.[5]

## B.   James Crumbley purchases a firearm

James Crumbley was an Acme customer who had made purchases at the store twice before.[6] In November 2021, James visited Acme with his 15-year old son, E.C.[7] The office manager, Cammy Back, stepped out onto the sales floor to assist James.[8] James told Cammy that he had his eye on a Sig Sauer pistol and that he wanted to buy it.[9]

---

complaint. See Complaint, ECF No. 1, PageID.17 at ¶¶ 77-82; *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) ("if a plaintiff references or quotes certain documents, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion….").

[3] Ex. 1 at 101.

[4] A trigger lock statement is a form signed by the customer verifying that the firearms dealer provided the customer with a trigger lock or case lock for the firearm. *Id*. at 90-91.

[5] *Id*. at 80-82, 86.

[6] *Id*. at 93, 87-88; Complaint, ECF No. 1, PageID.17 at ¶77.

[7] Ex. 1 at 87-89; Complaint, ECF No. 1, PageID.17 at ¶76.

[8] *Id*.

[9] *Id*.

After recognizing James from prior purchases, Cammy told him "you know the routine."[10] The gun-sale process then ensued: James handed Cammy his driver's license; Cammy made copies of the driver's license; and Cammy handed James the Form 4473.

James completed the 4473, specifically acknowledging that it is illegal to buy a gun for someone else:

> Are you the actual transferee/buyer of the firearm(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)? **Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.**[11]

Clearance for James's background check did not come straight through, and the system indicated that he was in "research" mode.[12] Because clearance can take some time, Cammy asked the sales clerk to take over the purchase and Cammy went back to her office.[13] James waited in the store for his clearance to come back.[14] A

---

[10] *Id.*

[11] *Id.* at 87-90; See also **Exhibit 2,** James Crumbley Form 4473. This Court may consider the Form 4473 because it is cited in the preliminary examination transcript and included as Exhibit #43. *Watermark Senior Living Ret. Communities, Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 425-26 (6th Cir. 2018) (explaining that a defendant may attach documents referenced in the plaintiff's complaint or public records that refute a plaintiff's claim, including documents from other court proceedings, to a Rule 12(b)(6) motion).

[12] Ex. 1 at 88.

[13] *Id.*

[14] *Id.*

short while later, NICS cleared James to purchase the firearm.[15] James then paid for the Sig Sauer, the sales clerk handed James a gun case containing the Sig Sauer, and James and E.C. left the store.[16]

Four days later, E.C. somehow obtained the gun from his father and committed the tragic shooting at Oxford High. As Cammy explained to law enforcement on the night of the shooting, she had no reason to believe that James was purchasing the Sig Sauer for anyone else – let alone E.C.[17] There were no statements made at the time of the sale that James was purchasing the gun for anyone else.[18] E.C. did not make any comment that the Sig Sauer was the firearm he wanted.[19] Nor did James ever ask E.C. if the Sig Sauer was the one he wanted.[20] Cammy confirmed that had any of these things occurred, she would not have sold the firearm.[21]

### C.    Plaintiffs sue Acme for damages arising out of E.C.'s criminal acts

Plaintiffs filed this suit against Acme, attempting to hold it liable for damages resulting from E.C.'s criminal acts. They raise three causes of action: (1) negligence, (2) negligent entrustment, and (3) public nuisance.

---

[15] Ex. 2.

[16] Ex. 1 at 88-89, 91-92.

[17] *Id.*

[18] *Id.*

[19] *Id.* at 94-95.

[20] *Id.*

[21] *Id.* at 95, 102.

Under the negligent entrustment claim, plaintiffs allege that Acme had a "duty to avoid entrusting a dangerous instrument like the [Sig Sauer] to a party showing a heightened propensity to misuse it either directly or through one or more intermediaries."[22] And, that Acme breached that duty by selling the firearm to James "with actual or constructive knowledge that he would transfer the [Sig Sauer] to E.C. and that E.C. was the intended user."[23]

Plaintiffs allege that "the circumstances of the sale provided Acme with, at minimum, constructive knowledge that E.C., rather than his father was the actual purchaser" of the Sig Sauer.[24] They say that Acme had this knowledge "based on a collection of 'red flags' which Acme willfully ignored."[25] And they say that James or E.C. "engaged in behavior or made one or more statements while in the store which further indicated that the [Sig Sauer] was intended for E.C."[26]

But the complaint does not identify a single fact supporting these broad allegations. Plaintiffs do not identify what the "red flags" were. Nor do they state what "behavior" or "statements" would have put Acme on notice that James was allegedly buying the firearm for his son.

---

[22] Complaint, ECF No. 1, PageID.63 at ¶ 333.

[23] *Id*. at PageID.63 at ¶ 335.

[24] *Id*. at PageID.17 at ¶ 75.

[25] *Id*. at PageID.17 at ¶ 75.

[26] *Id*. at PageID.17 at ¶ 83.

Because plaintiffs' complaint fails to state a valid claim of negligent entrustment, and because the negligence and public nuisance claims are barred as a matter of law, the claims against Acme should be dismissed.

## STANDARD OF REVIEW

The purpose of Rule 12(b)(6) of the Federal Rules of Civil Procedure is "to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 420 (6th Cir. 2001). In order to properly state a claim on which relief can be granted, a complaint must "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

As a general rule, the Court must assume the veracity of the allegations in the complaint. *Iqbal*, 556 U.S. at 679. But application of the general rule is limited to allegations comprised of well-pleaded facts. *Id.* at 678-79. Allegations comprised of labels and conclusions, formulaic recitals of elements, unadorned accusations, or naked assertions aren't entitled to a presumption of truth. *Id.* at 678; *Twombly*, 550 U.S. at 555.

7

## ARGUMENT

**I.** **Plaintiffs' negligence and public nuisance claims must be dismissed because the PLCAA prohibits such claims against firearms sellers like Acme.**

**A.** **The PLCAA prohibits civil lawsuits against firearms sellers for damages arising from the criminal misuse of firearms by third parties.**

Congress enacted the PLCAA in 2005 with bipartisan support.[27] It did so after finding that "[t]he manufacture, importation, possession, sale, and use of firearms and ammunition in the United States are heavily regulated by Federal, State and local laws;" that lawsuits attempting to impose liability on an entire industry for harm caused by a third party constitute an unreasonable burden on interstate commerce; and "the possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the legal system." 15 U.S.C. § 7901(a)(4)-(5); see also *City of New York v. Beretta*, 524 F.3d 384, 394-95 (2d Cir. 2008) ("Congress explicitly found that the third-party suits that the Act bars are a direct threat to the firearms industry," and a "rationally perceived substantial effect on the industry [because] of the litigation that the Act seeks to curtail.").

Congress found that manufacturers and sellers of firearms "are not, and should not, be liable for the harm caused by those who criminally or unlawfully

---

[27] *U.S. Senate Roll Call Vote 109th Congress - 1ˢᵗ Session*, UNITED STATES SENATE, https://www.senate.gov/legislative/LIS/roll_call_votes/vote1091/vote_109_1_00219.htm#top (last visited August 25, 2022).

misuse firearm products … that function as designed and intended." 15 U.S.C. §

7901(a)(5). The PLCAA, therefore, prohibits the commencement of a "qualified

civil liability action" in federal or state court. 15 U.S.C. § 7902(a). A "qualified civil

liability action" is "a civil action … brought by any person against a manufacturer

or seller[28] of a qualified product[29] … for damages … or other relief, resulting from

the criminal or unlawful misuse of a qualified product by … a third party." 15 U.S.C.

§ 7903(5)(A).

This broad immunity applies in all but a few narrowly defined circumstances:

actions based on negligent entrustment, negligence per se, and knowing violations

of state or federal statutes related to firearms. 15 U.S.C. § 7903(5)(A)(ii), (iii). Any

claim that falls outside of these or the other statutory-defined exceptions must be

dismissed. 15 U.S.C. § 7903(5)(A)(i)-(iv); *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1132

(9th Cir. 2009); see also *Sambrano v. Savage Arms, Inc.*, 338 P.3d 103, 105 (N.M.

Ct. App. 2014) (explaining that "subject to exceptions … the PLCAA establishes a

---

[28] A "seller" includes a dealer who is engaged in the business of selling firearms at wholesale or retail in interstate or foreign commerce and who is licensed to engage in business as such a dealer. 15 U.S.C. § 7903(6)(B); 18 U.S.C. § 921 (a)(11). "Engaged in the business" as applied to a dealer in firearms means "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms." 18 U.S.C. § 921 (a)(21)(C).

[29] A "qualified product means a firearm … that has been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4).

new legal standard for actions that fall within the definition of a qualified civil liability action that preempts common law claims based on general tort liability.").

Congress intended the PLCAA to serve as threshold immunity, not merely a defense to liability following discovery or trial. That is evident from the language providing that every qualified civil liability action pending when the PLCAA became law was to "to be immediately dismissed." 15 U.S.C. § 7902(b). See also *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 44 (D.D.C. 2013) (PLCAA immunity is a threshold issue).

Since the enactment of the PLCAA, federal courts have dismissed cases against manufacturers and retailers without discovery. See, e.g., *Travieso v. Glock Inc.*, 526 F. Supp. 3d 533, 536 (D. Ariz. 2021) (granting gun manufacturer's motion to dismiss for failure to state a claim because Congress intended the preemptive scope of the PLCAA to bar common law tort claims); *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1219 (D. Colo. 2015) (dismissing claims against online gun retailer without discovery because claims were barred by the PLCAA); *Bannerman v. Mt. State Pawn, Inc.*, Civil Action No. 3:10-CV-46, 2010 U.S. Dist. LEXIS 145292 (N.D.W. Va. Nov. 5, 2010) (granting gun seller's motion to dismiss) (**Exhibit 3**). The same result should follow here.

**B.** **The PLCAA applies here and bars plaintiffs' negligence and public nuisance claims.**

The PLCAA prohibits plaintiffs' lawsuit. This case fits squarely within the "qualified civil liability action" definition. This is a civil action brought by persons (plaintiffs) against a seller (Acme) of a qualified product (the Sig Sauer handgun) for damages and other relief resulting from the criminal use of the qualified product by a third party (the shooting by E.C.).[30] 15 U.S.C. § 7903(5)(A). Consequently, the PLCAA mandates dismissal unless an exception applies.

Plaintiffs allege claims of negligence, negligent entrustment, and public nuisance under Michigan law. While the PLCAA provides an exception for negligent entrustment, the statute does not include exceptions for general negligence or public nuisance. A plain reading of the text therefore supports a prohibition on such claims. *Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 386 (Alaska 2013); *Ileto*, 565 F.3d at 1135-36 ("Congress clearly intended to preempt common-law claims, such as general tort theories of liability[,]" including "classic negligence and nuisance" claims); *Phillips*, 84 F. Supp. 3d at 1224 (concluding that the PLCAA preempts ordinary negligence actions); *Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 321 (Mo. 2016) ("The specific exceptions for negligent entrustment and negligence per se confirm that the PLCAA preempts common law state tort actions, like

---

[30] Complaint, ECF No. 1, PageID.7, 62-65 at ¶15, ¶¶321-351.

Appellant's negligence claim, that do not fall within a statutory exception"); *Jefferies*, 916 F. Supp. 2d at 46 (the PLCAA "unequivocally" bars ordinary negligence claims).

Moreover, "reading a general negligence exception into the statute would make the negligence per se and negligent entrustment exceptions a surplusage." *Estate of Kim*, 295 P.3d at 386.

As further explained by the Ninth Circuit in *Ileto*, the "[negligent entrustment] exception demonstrates that Congress consciously considered how to treat tort claims. While Congress chose generally to preempt all common-law claims, it carved out an exception for certain specified common-law claims (negligent entrustment and negligence per se)." *Ileto,* 565 F3d 1126, 1135 n 6; *Cf. Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296 (1983) ("[W]here . . . Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (brackets and internal quotation marks omitted)).

It therefore follows from the language of the PLCAA and the above-cited authority that plaintiffs' negligence and public nuisance claims are preempted by the PLCAA and must be dismissed.

## C.  The PLCAA's predicate exception does not apply to plaintiffs' negligence claim.

Plaintiffs will likely argue that their negligence claim meets the exception in 15 U.S.C. § 7903 (5)(A)(iii), which provides that the PLCAA does not bar actions in which a seller "knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." This exception is often referred to as the "'predicate exception' because a plaintiff not only must present a cognizable claim, he or she also must allege a knowing violation of a 'predicate statute.'" *Ileto*, 565 F.3d at 1132.

Here, plaintiffs list various statutory violations, including: 18 U.S.C. §§ 3 and 4; 18 U.S.C. §§§§§§  922(a)(6), 922(m), 922(t), 922(x), 923(g), and 924(a); and M.C.L. §§ 600.3801 and 750.234f.[31] None of these plausibly allege an applicable predicate statutory violation.

The alleged violations of 18 U.S.C. §3 (accessory after the fact), 18 U.S.C. § 4 (misprision of felony), and M.C.L. §750.234f (possession of firearm by minor) do not meet the predicate exception of the PLCAA because they are not "applicable to the sale or marketing" of firearms.[32] 15 U.S.C. § 7903 (5)(A)(iii). Rather, these statutes regulate criminal activity.

---

[31] Complaint, ECF No. 1, PageID.63 at ¶328.

[32] Moreover, there are no allegations in the complaint that plausibly support a violation of 18 U.S.C. §§ 3 and 4. There are no allegations in the complaint that Acme knew that an offense against the United States was committed and that it

M.C.L. § 600.3801 is a codification of a nuisance claim under Michigan law. This statute cannot meet the limited language of the predicate exception because it is a general tort claim and not a statute "applicable to the sale or marketing" of a firearm. The Ninth Circuit's analysis of the PLCAA in this regard is instructive: "an examination of the text and purpose of the PLCAA shows that Congress intended to preempt general tort theories of liability even in jurisdictions … that have codified such causes of action." *Ileto*, 565 F.3d at 1136. It was "more likely that Congress had in mind only these types of statutes—statutes that regulate manufacturing, importing, selling, marketing, and using firearms or that regulate the firearms industry—rather than general tort theories that happened to have been codified by a given jurisdiction." *Id*. As such, *Ileto* held that the California Civil Code sections which codified common law claims of negligence and nuisance were preempted by the PLCAA. *Id*. This exact reasoning applies to the nuisance statute asserted by plaintiffs and supports the conclusion that M.C.L. § 600.3801 can't serve as a predicate statute for purposes of the PLCAA.

Plaintiffs' reliance on 18 U.S.C. §§ 922(a)(6), 922(m), and 924(a) also fails. These statutes involve a person's role in completing and maintaining a Form 4473.

---

"assist[ed] the offender in order to hinder or prevent his apprehension, trial or punishment." 18 U.S.C. § 3. Nor are there any allegations that Acme "ha[d] knowledge of the actual commission of a felony," concealed it, and did "not as soon as possible make known the same to some judge of other person in civil or military authority under the United States." 18 U.S.C. § 4.

Section 922(a)(6) prohibits making a false oral or written statement "material to the lawfulness of the sale." 18 U.S.C. § 922(a)(6). Section 922(m) prohibits a dealer from making a false entry in, or failing to make an appropriate entry in, or failing to properly maintain any record which the dealer is required to keep under the Act. 18 U.S.C. § 922(m). And section 924(a) proscribes the penalties for a violation of section 922(m). 18 U.S.C. § 924(a)(3).

The complaint is devoid of any allegations that Acme made false entries or false statements in connection with the Form 4473 – only that James did so. The ATF requires that buyers complete the Form 4473 accurately and truthfully before purchasing a firearm from a federal firearms licensee.[33] The Form 4473 also requires the dealer to certify that the dealer believes, based on the information disclosed in the form, that it is not unlawful for the dealer to transfer the firearm to the prospective purchaser.[34] So a dealer can only violate 18 U.S.C. §§§ 922(a)(6), 922(m), and 924(a) if it knows or has reason to know that the information in the Form 4473 is false.

Again, there are no factual allegations in plaintiffs' complaint that an Acme employee signed James's 4473 with knowledge that James made false entries or statements. So the above statutes don't plausibly allege predicate statutory

---

[33] See Ex. 2.
[34] *Id.*

violations. Similarly, 18 U.S.C. §923(g), which regulates firearms dealers recordkeeping, can't serve as a predicate statute because there's no allegation that Acme failed to maintain its sales records.

18 U.S.C. §922(t) provides that firearms dealers must run NICS background checks before a firearm sale. There's no allegation that Acme failed to run a NICS background check. And in fact, Cammy confirmed that she *did* run a background check on James.[35]

18 U.S.C. §922(x) proscribes limitations on sales or transfers of firearms to juveniles. Specifically, it prohibits the sale or transfer of a handgun "to a person who the transferor who the transferor knows or has reasonable cause to believe is a juvenile." 18 U.S.C. §922(x)(1)(A). But plaintiffs don't allege that *Acme* transferred the Sig Sauer to E.C. It's their position that James did. So, under the alleged facts, 922(x) can't apply to Acme. The complaint does not plausibly support a violation of this statute and it can't serve as a predicate exception.

Although plaintiffs allege various statutory violations, for all of the reasons above, none of the statutes meet the PLCAA's predicate exception. So plaintiffs cannot rely on these statutes to support a negligence claim.

---

[35] Ex. 1 at 87-90.

## II.   Plaintiffs' negligent entrustment claim must be dismissed because it fails to state a plausible claim for relief.

### A.   Dismissal is required when the plaintiff fails to state a claim upon which relief can be granted.

Dismissal is proper under Rule 12(b)(6) of the Federal Rules of Civil Procedure if the complaint fails to establish entitlement to relief. *Iqbal*, 556 U.S. at 678-679. To establish entitlement to relief, the complaint must cross the line of possibility and enter the realm of plausibility. *Id*. The plausibility standard requires "more than a sheer possibility" of misconduct. *Id.* at 678. If the well-pleaded facts do not permit the Court to infer more than a sheer possibility of misconduct, the complaint alleges—but fails to show—entitlement to relief. *Id.* at 679. Thus, factual allegations that are merely consistent with liability fall short of "the line between possibility and plausibility of entitlement to relief." *Id.* at 678.

The plausibility standard prevents plaintiffs from "launching a case into discovery" and "brandishing the threat of discovery during settlement negotiations" when "there is no reasonable likelihood" that a plausible claim can be constructed from the facts alleged in the complaint. *16630 Southfield Ltd. P'ship v. Flagstar Bank*, 727 F.3d 502 (6th Cir. 2013). In sum, the standard requires the plaintiff to "have greater knowledge" of the facts, as the plaintiff "may not use the discovery process to obtain these facts after filing suit." *New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046, 1051 (6th Cir. 2011).

**B.    Plaintiffs have failed to plead sufficient facts to establish a negligent entrustment claim under Michigan law.**

Plaintiffs allege a negligent entrustment claim under Michigan law. Although the PLCAA contains an exception from the definition of a qualified civil liability action for negligent entrustment (15 U.S.C. § 7903(5)(A)(ii)), the exception doesn't apply here because plaintiffs' complaint doesn't "plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681.

Because the PLCAA does not "create a public or private cause of action or remedy," the availability of a negligent entrustment claim depends on state law. 15 U.S.C. § 7903 (5)(C). A plaintiff alleging negligent entrustment under Michigan law must establish two factors: "First, the entrustor is negligent in entrusting the instrumentality to the entrustee. Second, the entrustee must negligently or recklessly misuse the instrumentality." *Allstate Ins Co v. Freeman*, 408 N.W.2d 153, 157 (Mich. Ct. App. 1987).

An entrustor is negligent in entrusting the instrumentality to the entrustee if the entrustor "knew or should have known of the unreasonable risk propensities of the entrustee." *Fredericks v. GM Corp.*, 311 N.W.2d 725, 727 (Mich. 1981). And "[t]o prove an entrustor should have known an entrustee was likely to use the entrusted chattel in an unsafe manner, peculiarities of the entrustee sufficient to put the entrustor on notice of that likelihood must be demonstrated." *Id.*

Thus, to establish negligent entrustment, plaintiffs must show that Acme knew or had "special knowledge" that put it on notice that James—the buyer—was not to be entrusted, that he was likely to use the Sig Sauer in an unsafe manner, or that there were any "unreasonable risk propensities." *Id*. They have not alleged such facts, even in a conclusory fashion. So the negligent entrustment claim fails for that reason alone. *See Phillips,* 84 F. Supp. 3d 1220 (holding the plaintiff's negligent entrustment claim failed to allege "any facts showing that defendants reasonably should have known anything about [mass shooter's] purposes in making online purchases" of ammunition and tactical gear from defendants); *Midgette v. Wal-Mart Stores, Inc.*, 317 F. Supp. 2d 550, 567 (E.D. Pa. 2004) (because "no jury could reasonably find that Wal-Mart knew or had reason to know that [the buyer] intended or was likely to use the ammunition to create an unreasonable risk of harm to anyone" where the buyer was calm and courteous during the sale and purchased common hunting ammunition).

Instead, the crux of plaintiffs' claim is that that Acme knew, or had reason to know, that its sale of the Sig Sauer to James would result in *E.C.'s* use of the Sig Sauer.[36] As a preliminary matter, there is no duty owed by a retailer to inquire into a customer's intended use of a product that he was lawfully entitled to purchase. *Buczkowski v. McKay*, 490 N.W.2d 330, 335 (Mich. 1992). Nor is there a duty to

---

[36] Complaint, ECF No. 1, PageID.63 at ¶ 335.

"discover other potential incompetent persons or foresee the criminal acts of others absent special circumstances." *Id*. Furthermore, a minor's mere use of a firearm is not unlawful in Michigan so long as an adult supervises the minor. M.C.L. § 750.234f. Applied here, Acme had no duty to inquire into James's intended use of the Sig Sauer or foresee E.C.'s use and eventual criminal acts. Still, even accepting plaintiffs' theory, the complaint is devoid of facts supporting the claim.

The complaint says that "a collection of 'red flags'" should have alerted Acme that E.C. was the intended user of the Sig Sauer. [37] And, that James or E.C. "engaged in behavior or made one or more statements while in the store which further indicated that the [Sig Sauer] was intended for E.C."[38] But the complaint does not identify what those "red flags," "statements," or "behavior[s]" were.

There are no factual allegations about what, if anything, was said between James and E.C., or what behaviors, if any, James and E.C. exhibited at the time of the sale. Plaintiffs do not allege any facts typically present in a straw sale, i.e.: that E.C. pointed to the Sig Sauer, that he examined or held the Sig Sauer, that he asked questions about the gun's operation during the sale, that he told James to buy the Sig

---

[37] *Id.* at PageID.17 at ¶ 75.
[38] *Id.* at PageID.17 at ¶ 83.

Sauer, that he paid for the Sig Sauer, or that James in anyway asked E.C. for his input on the purchase.[39]

One case where the court allowed discovery on a negligent entrustment claim based on an alleged straw sale is *Chiapperini v. Gander Mountain Co., Inc.*, 13 N.Y.S.3d 777, 780 (Sup. Ct. 2014). In *Chiapperini*, Dawn Nguyen allegedly agreed to buy guns for William Spengler, a convicted felon. *Id*. at 686. The two walked into the gun store together and when approached by a salesperson, Spengler, not Nguyen, refused any assistance. *Id*. Nguyen bought two firearms and paid in cash, which was provided by Spengler. *Id*. Spengler then took the guns off the counter and left the store with them. *Id*. Nguyen never again possessed the guns. *Id*.

The court held that the gun store should have known that Spengler was not a lawful gun owner because of the following red flags: "Spengler's presence and his taking the initiative to refuse assistance; the cash payment for the weapons; Nguyen's failure to inquire about ammunition and proper operation; and, Spengler

---

[39] On the contrary, the pleadings show that none of these statements or behaviors happened at the time of the sale. Cammy testified that she had no reason to believe that James was purchasing the Sig Sauer for anyone else; that there were no statements made at the time of the sale that James was purchasing the gun for anyone else; that E.C. didn't make any comment that the Sig Sauer was the firearm he wanted; and that James didn't ask E.C. if the Sig Sauer was the firearm he wanted. Ex. 1 at 94-95. In other words, the known facts contradict plaintiffs' negligent entrustment claim.

taking possession of the guns right at the sales counter and leaving with them." *Id.* at 790. Plaintiffs' complaint alleges nothing close to these facts.

Without pleading such particularities, plaintiffs cannot show how Acme could have constructive or actual knowledge that E.C. would be the main user of the Sig Sauer or that he would use the Sig Sauer in an unsafe manner. *Fredericks,* 311 N.W.2d at 727. Plaintiffs only make conclusory statements that it is plausible that Acme knew, or should have known, because E.C. was a minor and was with his dad at the time of the sale.[40] These allegations only show to "sheer possibility" and don't amount to plausibility per *Iqbal*, 556 U.S. at 678.

In short, plaintiffs' complaint does not "plausibly suggest an entitlement to relief" because there are simply no facts alleged that, if true, would have caused Acme to know or have reason to know that James – a repeat Acme customer – would transfer the Sig Sauer to E.C., who would then use the Sig Sauer to commit a crime. See *Iqbal*, 556 U.S. at 681. Instead, their complaint contains vague, generalized, and conclusory allegations. Plaintiffs cannot "proceed to discovery simply by making bare allegations that [Acme] violated the law." *16630 Southfield Ltd. P'ship*, 727 F.3d at 504. Accordingly, this Court should dismiss plaintiffs' negligent entrustment claim under Rule 12(b)(6).

---

[40] Complaint, ECF No. 1, PageID.17 at ¶¶ 77-82.

**C.** **Plaintiffs have failed to plead sufficient facts to establish a negligent entrustment claim under the PLCAA.**

Even if plaintiffs properly plead a negligent entrustment claim under Michigan law, the claim would still be excluded by the PLCAA. Although the PLCAA does not create a cause of action for negligent entrustment, the PLCAA still contains a definition of negligent entrustment that is not to be exceeded by a state's common law. See, e.g., *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 278 (Conn. 2019) (explaining that since the plaintiffs failed to plead a state-law claim, the court did not need to consider whether the claim had to meet the PLCAA's "stricter requirements"). Therefore, any state law negligent entrustment claim must also satisfy the PLCAA's definition of negligent entrustment. See, e.g., *Delana*, 486 S.W.3d at 324 (explaining that a state-law negligent entrustment claim may continue to be asserted if it falls within the definition of a "negligent entrustment" claim provided in the PLCAA).

The PLCAA defines negligent entrustment as "the supplying of a qualified product by a seller for use by another person when the seller knows, or reasonably should know, *the person to whom the product is supplied* is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others." 15 U.S.C. § 7903(5)(B) (emphasis added). This definition only attaches liability when the specific person to whom the firearm is supplied to is the same person who misused the firearm.

Under this standard, plaintiffs' complaint is devoid of any factual allegations that could establish that Acme knew or should have known that James would use the Sig Sauer in a manner involving unreasonable risk of physical injury. As explained above, there are no facts that would have put Acme on notice that James was likely to use the Sig Sauer in a manner involving unreasonable risk of injury. And plaintiffs' claims are based on *E.C.'s* criminal misuse of the Sig Sauer, not James. So, for multiple reasons, the negligent entrustment claim would still be preempted by the PLCAA.

## CONCLUSION

For the foregoing reasons, Acme respectfully requests entry of an order dismissing plaintiffs' claims against it under Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

*/s/ Donovan S. Asmar*
Thomas J. Rheaume, Jr. (P74422)
Donovan S. Asmar (P77951)
Bodman PLC
201 W. Big Beaver Road, Suite 500
Troy, MI 48084
(248) 743-6000
Attorneys for Defendant Acme
Dated: September 6, 2022          Shooting Goods, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2022, I caused the foregoing paper to be electronically filed with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

*/s/ Donovan S. Asmar*
Donovan S. Asmar (P77951)

25