**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MATTHEW MUELLER and MARY MUELLER as Co-Next Friends for ELIJAH MUELLER, a minor,

Plaintiffs,

vs.

OXFORD COMMUNITY SCHOOL DISTRICT, SHAWN HOPKINS, NICHOLAS EJAK, TIMOTHY THRONE, STEVEN WOLF, in their individual capacities, KENNETH WEAVER, in his official capacity, and ACME SHOOTING GOODS, LLC,

Defendants.

Case No. 22-cv-11448

Hon. Mark A. Goldsmith

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO ACME SHOOTING GOODS, LLC'S RENEWED MOTION TO DISMISS**

# TABLE OF CONTENTS


INDEX OF AUTHORITIES ____ iii
RESTATEMENT OF QUESTIONS PRESENTED ____ vi
MOST APPROPRIATE AUTHORITY ____ vii
INTRODUCTION ____ 1
STANDARD OF REVIEW ____ 3
ARGUMENT ____ 4
I. This Case is Not a Prohibited Qualified Civil Liability Action ____ 4
A. Plaintiffs' Allegations Satisfy One or More Exceptions Removing This Entire Case from the Scope of PLCAA's Bar ____ 4
1. Plaintiffs Have Plausibly Alleged that Acme Knowingly Violated One or More Laws Applicable to the Sale or Marketing of Firearms in a Manner That Proximately Resulted in Harm ____ 4
a. The FAC Plausibly Alleges That Acme Had, at Minimum, Constructive Knowledge that James Was a Straw Purchaser ____ 5
b. The FAC Plausibly Explains How Acme Knowingly Violated Relevant Statutes by Completing a Straw Sale in the Presence of Clear Red Flags ____ 9
2. Plaintiffs Have Plausibly Alleged that Acme Negligently Entrusted the Acme Gun ____ 12
3. Where Satisfied, PLCAA's Predicate Exception or Negligent Entrustment Exception Allow All Individual Claims Within an "Action" to Proceed ____ 18
B. Plaintiffs' Case Does Not Fall Within the General Definition of a Qualified Civil Liability Action ____ 20
II. In the Alternative, PLCAA is Unconstitutional ____ 22
A. PLCAA Exceeds Congress's Enumerated Powers ____ 22
B. PLCAA Violates the Tenth Amendment ____ 23
C. PLCAA Violates Due Process ____ 24
D. PLCAA Violates Equal Protection ____ 25
CONCLUSION ____ 25

# INDEX OF AUTHORITIES

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank*, 727 F.3d 502 (6th Cir. 2013) 18

*Abramski v. United States*, 573 U.S. 169, 179-81 (2014) 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) 3

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991) 22

*Bannerman v. Mt. State Pawn*, 2010 U.S. Dist. LEXIS 145292 (N.D.W.V. Nov. 5, 2010) 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, (2007) 3

*Brady v. Walmart, Inc.* 2022 U.S. Dist. LEXIS 135143 (D. Md. Jul. 28, 2022) 12

*Buczkowski v. McKay*, 490 N.W.2d 330 (Mich. 1992) 16

*Carney*, 387 F.3d at 448-50, 448 n. 8 6, 9

*Chiapperini v. Gander Mountain Co., Inc.*, 13 N.Y.S.3d 777 (N.Y. Sup. Ct. 2014) passim

*Cipollone*, 505 U.S. 504 20

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) 25

*City of Gary v. Smith & Wesson Corp.*, No. 45D05-0005-CT-00243, 4 (Ind. Super. Ct. Oct. 23, 2006) 25

*Conroy v. Aniskoff*, 507 U.S. 511, 515 (1993) 21

*Corporan v. Wal-Mart Stores East, LP*, 2016 U.S. Dist. LEXIS 93307 (D. Kan. Jul. 18, 2016) vi, 1, 12, 10, 19

*Coxie v. Academy, Ltd.*, No. 2018-CP-42-04297 (S.C. Ct. Cmmn. Pl. Jul. 29, 2019) 1, 10, 15

*Delana v. CED Sales, Inc.*, 486 S.W.3d 316 (Mo. 2016) 16

*Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59 (1978) 24

*Englund v. World Pawn Exch.*, 2017 Ore. Cir. LEXIS 3, *11-12 (Jun. 30, 2017) 1, 15, 19

*Englund v. World Pawn Exch., LLC*, No. 16-CV-00598 (Aug. 13, 2018) 1

*Erie R.R. v. Tompkins***,** 304 U.S. 64, 78 (1938) 24

*Fox v. L&J Supply, LLC*, No. 2014-24619, 1 n.1 (Pa. Ct. Cmmn. Pl. Nov. 26, 2018) 1, 19

*Goldstein v. Earnest*, No. 37-2020-00016638-CU-PO-CTL, 3-4 (Ca. Super. Ct. Jul. 2, 2021) *pet. for writ denied* (Ca. Ct. App. Sep. 4, 2021) 19

*Gregory*, 501 U.S. 452; *Bond*, 134 S. Ct. 2077 20

*Gustafson*, 2022 PA Super 140 (J. Kunselman) 23

*Haddad v. Tsoukalas*, 2006 Mich. App. LEXIS 74 (Jan. 12, 2006) vii, 13

*Ileto v. Glock*, 565 F.3d 1126 (9th Cir. 2009) ____ 11

*Lopez v. Badger Guns, Inc.*, No. 10-cv-18530, 24:14-25:6 (Wis. Cir. Ct. Mar. 24, 2014) ____ 25

*Marbury v. Madison,* 5 U.S. 137, 163 (1803) ____ 24

*McBride v. General Motors Corp*., 737 F. Supp. 1563 (M.D. Ga. 1990) ____ 25

*Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ____ 20

*Midgette v. Wal-Mart Stores, Inc.*, 317 F. Supp. 2d 550 (E.D. Pa. 2004) ____ 16

*Murphy v. NCAA*, 138 S. Ct. 1461 (2018) ____ 22

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 558 (2012) ____ 22

*New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046, 1051 (6th Cir. 2011) ____ 18

*New York*, 505 U.S. at 162 ____ 24

*Parsons v. Colt's Mfg. Co.*, 2020 U.S. Dist. LEXIS 65341 (D. Nev. April 10, 2020) ____ 12

*Prescott v. Slide Fire Solutions, LP*, 410 F.Supp.3d 1123 (D. Nev. 2019) ____ 12, 19

*Rhodes v. R&L Carriers, Inc.*, 491 Fed. Appx. 579 (6th Cir. 2012) ____ vii, 3, 7

*Rodgers v. United States*, 185 U.S. 83, 86 (1902) ____ 21

*Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422 (Ind. App. 2007), *transfer denied* 915 N.E.3d 978 (Ind. 2009) ____ 11

*Smith v. United States*, 508 U.S. 223, 228-29 (1993) ____ 15

*Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262 (Conn. 2019) *cert denied sub nom* ____ 16

*United States v. Carney*, 387 F.3d 436 (6th Cir. 2004) ____ vii

*Vinny's Landscaping, Inc. v. United Auto Credit Corp.*, 207 F. Supp. 3d 746 (E.D. Mich. 2016) ____ passim

*Williams v. Beemiller, Inc*., 100 A.D.3d 143 (N.Y. App. Div. 2012) ____ vi, 1, 10, 19

**Statutes**

15 U.S.C. § 7901(a)(6) ____ 21

15 U.S.C. § 7901(b)(1) ____ 21

15 U.S.C. §§ 7901-7903 ____ v

15 U.S.C. § 7903(5)(B) ____ 12, 14

15 U.S.C. § 7903(5)(A) ____ passim

15 U.S.C. §§ 7903(5)(A)(ii-iii) ____ passim

18 U.S.C. §§ 922(m) ____ 10

18 U.S.C. § 922(t) ____ 10

18 U.S.C. § 922(x) ____ 10
18 U.S.C. § 924(a)(1)(A) ____ 10
M.C.L.S. § 750.234f ____ 17
M.C.L.S. § 600.3801 ____ 11

**Other Authorities**

Restatement (Second) of Torts, § 390 ____ 14

# RESTATEMENT OF QUESTIONS PRESENTED

1) **Does the Protection of Lawful Commerce in Arms Act ("PLCAA," 15 U.S.C. §§ 7901-7903) support dismissal where Plaintiffs have alleged facts that satisfy PLCAA exceptions in § 7903(5)(A)(ii-iii) and the alleged facts place this case outside of the general definition of a prohibited action in § 7903(5)(A)?**

   Acme Shooting Sports, LLC's ("Acme's") Answer: Yes.

   Plaintiffs' Answer: No, and, in the alternative, PLCAA is unconstitutional.

2) **May this Court reject the well-pled allegations of the First Amended Complaint ("FAC") as to Acme's misconduct, deny Plaintiffs' the benefit of the reasonable inferences derived from the FAC and accept Acme's factual counter narrative in order to dismiss the FAC for failing to satisfy a plausibility pleading standard?**

   Acme's Answer: Yes.

   Plaintiffs' Answer: No.

## MOST APPROPRIATE AUTHORITY

- 15 U.S.C. § 7903(5)(A), 5(A)(ii-iii).

- All cases within the line(s) of authority including *Corporan v. Wal-Mart Stores East, LP*, 2016 U.S. Dist. LEXIS 93307 (D. Kan. Jul. 18, 2016), *Williams v. Beemiller, Inc.*, 100 A.D.3d 143 (N.Y. App. Div. 2012) *amended by* 103 A.D.3d 1191 (N.Y. App. Div. 2013) and *Chiapperini v. Gander Mountain Co., Inc.*, 13 N.Y.S.3d 777 (N.Y. Sup. Ct. 2014) cited in footnotes 3 and 9.

- *Rhodes v. R&L Carriers, Inc.*, 491 Fed. Appx. 579 (6th Cir. 2012) (attached as Ex. 5); *Vinny's Landscaping, Inc. v. United Auto Credit Corp.*, 207 F. Supp. 3d 746 (E.D. Mich. 2016).

- *United States v. Carney*, 387 F.3d 436 (6th Cir. 2004)

- *Haddad v. Tsoukalas*, 2006 Mich. App. LEXIS 74 (Jan. 12, 2006).

## INTRODUCTION

Plaintiffs have alleged that Acme negligently and unlawfully supplied the Acme gun[1] to E.C. (a minor) through his father, James Crumbley, despite actual and/or constructive knowledge that James was acting as a straw purchaser[2] for E.C. FAC ¶¶ 59-103. PLCAA's plain text and legislative history make clear that the statute provides no protection to gun dealers like Acme who knowingly violate the law or negligently entrust a gun. 15 U.S.C. §§ 7903(5)(A)(ii-iii). Consistent with this reality, courts across the country have considered allegations similar to Plaintiffs' that a gun dealer knowingly completed the straw sale of a firearm later used in a crime and have found that PLCAA does not bar any claims against the gun seller in a case were such allegations are present.[3] Against this uniform and overwhelming consensus, Acme cannot cite a single case dismissing claims under PLCAA in the face of similar allegations – because no such case exists. As

---

[1] All terms carry the same meaning as in Plaintiffs' FAC.

[2] *See* FAC ¶ 64.

[3] *E.g.*, *Corporan*, 2016 U.S. Dist. LEXIS 93307 (denying motion to dismiss); *Williams*, 100 A.D.3d 143 (reversing grant of motion to dismiss); *Englund v. World Pawn Exch.*, *LLC*, 2017 Ore. Cir. LEXIS 3 (Jun. 30, 2017) (attached as **Ex. 1**) (denying motion to dismiss); *Englund v. World Pawn Exch.*, *LLC*, No. 16-CV-00598 (Aug. 13, 2018) (denying motion for summary judgment) (attached as **Ex. 2**); *Fox v. L&J Supply*, *LLC*, No. 2014-24619, (Pa. Ct. Cmmn. Pl. Nov. 26, 2018) (attached as **Ex. 3**) (denying motion for summary judgment); *Coxie v. Academy, Ltd.*, No. 2018-CP-42-04297 (S.C. Ct. Cmmn. Pl. Jul. 29, 2019) (attached as **Ex. 4**) (denying motion to dismiss); *Chiapperini*, 13 N.Y.S.3d 777 (denying motion to dismiss).

explained further below, there is no basis for this Court to contravene PLCAA's text, ignore all analogous cases, and dismiss Plaintiffs' claims.

PLCAA does not provide the absolute "immunity" claimed by Acme (*see* Brief in Support of Defendant Acme's Renewed Motion to Dismiss ("Acme MTD Br." at 11) but, instead, creates a limited affirmative defense that a gun industry actor can invoke only if certain conditions are satisfied. Specifically, PLCAA only bars certain "qualified civil liability action[s]" which both 1) fall within the general definition of this term under § 7903(5)(A) and 2) do not fall within one or more enumerated exceptions in § 7903(5)(A)(i-vi).

Where, as here, a plaintiff alleges that a gun dealer knowingly completed a straw sale, neither condition is satisfied. Assuming, *arguendo*, that this case falls within the general definition of a qualified civil liability action, Plaintiffs' allegations of a straw sale satisfy PLCAA exceptions – including those for a knowing violation of law proximately resulting in harm and for negligent entrustment. §7903(5)(A)(ii-iii). Second, this case does not, in fact, fall within the general definition of a qualified civil liability action when PLCAA is appropriately construed in light of Supreme Court precedent on federalism and principles of statutory interpretation. Finally, if read to block Plaintiffs' claims, PLCAA is unconstitutional.

In arguing that PLCAA bars this case, Acme fails to meaningfully engage with PLCAA's text, the statute's legislative history, cases applying PLCAA to similar facts, and the FAC's allegations. Acme relies on inapposite cases, and invites this Court to contravene the relevant pleading standard by not crediting the allegations in the FAC and denying Plaintiffs the benefit of reasonable inferences to which they are entitled. Like every other court faced with a similar issue and a similar fact pattern, this Court should reject Acme's motion to dismiss.

## STANDARD OF REVIEW

The Sixth Circuit has observed that even though *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) established "that a complaint must state a plausible claim—not just a possible claim" these cases should not be read "so narrowly as to be the death of notice pleading." *Rhodes*, 491 Fed. Appx. at 583-84 (**Ex. 5**) (reversing grant of motion to dismiss) (internal quotation omitted). "Rather than demanding highly specific factual allegations to satisfy this plausibility requirement, the district court should . . . look[] to whether the plaintiff [has] pled factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Vinny's*, 207 F. Supp. 3d at 748.

## ARGUMENT

### I. This Case is Not a Prohibited Qualified Civil Liability Action

#### A. Plaintiffs' Allegations Satisfy One or More Exceptions Removing This Entire Case from the Scope of PLCAA's Bar

PLCAA makes clear that a gun dealer is not protected from liability if it knowingly violates an applicable state or federal law in a manner that proximately results in harm or if it negligently entrusts a gun. 15 U.S.C. § 7903(5)(A)(ii-iii). The allegations of the FAC satisfy both of these enumerated exceptions and remove the entire case from the scope of PLCAA's bar even if the case would otherwise fall within the definition of a qualified civil liability action in §7903(5)(A).[4]

##### 1. Plaintiffs Have Plausibly Alleged that Acme Knowingly Violated One or More Laws Applicable to the Sale or Marketing of Firearms in a Manner That Proximately Resulted in Harm

PLCAA does not protect gun companies like Acme which are engaged in *unlawful* commerce in arms. This is a function of PLCAA's predicate exception – which expressly allows an entire "action in which" the defendant's knowing violation of a law "applicable to the sale or marketing" of firearms proximately contributed to a plaintiff's injury. § 7903(5)(A)(iii).

The FAC meets this exception by including allegations that Acme, either

[4] As explained below, it does not.

directly or as an accomplice/co-conspirator, knowingly violated applicable state and/or federal laws relating to, at minimum: 1) making false statements or false entries in firearms transaction records; 2) creating or contributing to a public nuisance; 3) failing to perform a background check on the appropriate person; 4) obscuring crimes by others; and/or 5) restrictions on the possession of firearms by minors. FAC ¶¶ 59-103. The FAC asserts that these were knowing violations by specifying "red flags" of a straw sale that provided Acme with, at minimum, constructive knowledge that James Crumbley was a straw purchaser. *Id*. Acme's violations of law proximately caused Plaintiffs' harm by foreseeably allowing a prohibited minor (E.C.) to gain access to a firearm he never should have been able to possess. Contrary to Acme's misrepresentation (Acme MTD Br. at 1), the FAC makes clear that Acme is liable not because of E.C.'s conduct but because of *Acme's own misconduct* in negligently and unlawfully selling the Acme gun to a clear straw purchaser. *E.g.*, FAC ¶ 103.

**a. The FAC Plausibly Alleges That Acme Had, at Minimum, Constructive Knowledge that James Was a Straw Purchaser**

Acme falsely claims that Plaintiffs failed to label the indicators which, in aggregate, telegraphed that James was straw purchasing the Acme gun for E.C. Acme MTD Br. at 8. To the contrary, the FAC emphasizes that Acme employee Cammy Back testified that she observed E.C. present with James in the store

during the sale of the Acme gun, but that E.C. had never been present with James during any prior firearms purchases. FAC ¶¶ 79-81. *Chiapperini* – upon which Acme mistakenly relies (Acme MTD Br. at 22-23) – specifically notes the "presence" of the actual user/possessor in the store during the straw purchase is a "red flag[]" of a straw sale. 13 N.Y.S.3d at 790; *see also Carney*, 387 F.3d at 448-50, 448 n. 8 (mentioning presence of actual purchaser as part of incriminating pattern of behavior that made it clear to gun dealers that straw purchases were occurring).

The fact that Ms. Back knew E.C. had not been present for James's prior purchases should, in context, have made his presence in the store during the transaction all the more concerning. Plaintiffs identify one or more additional and compelling red flags by alleging that James and/or E.C. engaged in behavior and/or made statements indicating that the Acme gun was intended for E.C. while the Crumbleys were in the store. FAC at ¶ 83. This allegation is consistent with E.C.'s later testimony that he both provided the funds James used to purchase the Acme gun and was the one who picked out that specific firearm. FAC ¶¶ 84-86.

In fact, a reasonable inference from this later testimony – an inference to which Plaintiffs are entitled on a motion to dismiss (*Vinny's*, 207 F. Supp. 3d at 748) – is that E.C. transferred the funds to James, handled the gun, pointed to the gun or was otherwise openly and actively involved with the transaction in the store. Further, Plaintiffs identify examples of public statements made by E.C. and his

mother after the purchase of the Acme gun that labeled the gun as intended for E.C. and demonstrated that the "Crumbleys did not believe there was a reason to hide the fact that the Acme gun was [for] E.C." FAC ¶¶ 84-95. The fact that the Crumbleys were telegraphing that the gun was for E.C. after the purchase provides, as in *Rhodes* and *Vinny's*, a reasonable basis from which to plausibly infer that they were engaging in similar overt behavior and/or statements while in the Acme store.

Acme first argues that because E.C. did not explicitly state that the statements and/or behavior referenced in FAC ¶¶ 84-86 occurred in the store, this Court is, in effect, entitled to draw the inference that they did not. *See* Acme MTD Br. at 6-7, 21-22. Acme inverts the applicable motion to dismiss standard; inferences are to be drawn in favor of the *non-moving party*. Further, Acme's inference is less reasonable than Plaintiffs' because it makes E.C.'s presence harder to explain.

Acme suggests that Plaintiffs' allegations as to the existence of red flags providing it with, at minimum, constructive knowledge of James's status as a straw purchaser can be dismissed as insufficiently plausible because Plaintiffs cannot identify, with specificity, the precise statements or behaviors displayed by E.C. and James inside the Acme store telegraphing that a straw sale was occurring. *See* Acme MTD Br. at 8. Acme is wrong. "[H]ighly specific factual allegations" are not required at this stage of the case. *Rhodes*, 491 Fed. Appx. at 583-84.

Plaintiffs need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable." *Id*.; *see also Vinny's,* 207 F. Supp. 3d at 748, 752-53. The above allegations easily satisfy this standard.

Acme also contends that this Court should ignore the allegations of the FAC and, instead, accept Ms. Back's counter-narrative that she had "no reason" to believe the gun was for E.C. *See* Acme MTD Br. at 5-6, 21-22. But this Court must look to the presence of red flags as alleged in the FAC (*Vinny's*, 207 F. Supp. 3d at 748) rather than undeveloped "facts" improperly introduced by Acme. Not only is this section of Ms. Back's testimony outside the FAC, but Plaintiffs' have had no opportunity to cross-examine Ms. Back or to depose other Acme employees or customers who may have witnessed the straw sale. Further, even were this Court, *arguendo*, entitled to consider Ms. Back's testimony at this preliminary stage, Acme *concedes that Ms. Back was not present so as to observe the totality of the sale of the Acme gun and any attendant red flags. Compare*, FAC ¶ 82 with Acme MTD Br. at 5.

Acme's denial of the existence of red flags and invitations for this Court to improperly draw inferences in its favor underscore that there are plausible factual scenarios that would enable Plaintiffs to prevail. Plaintiffs are entitled to discovery to try to develop these facts. Discovery may well reveal additional red flags beyond those currently alleged – although the existing red flags are more than

sufficient to support Acme's constructive knowledge that James was a straw purchaser.

**b. The FAC Plausibly Explains How Acme Knowingly Violated Relevant Statutes by Completing a Straw Sale in the Presence of Clear Red Flags**

Acme made false entries or false statements in connection with the applicable Form 4473 in violation of 18 U.S.C. §§ 922-924. FAC ¶¶ 59-103 (discussing how a dealer who "falsely certifies" a sale as lawful on a firearms transaction record it knows was filled out by a straw buyer commits a crime). Acme's insistence that it cannot have violated these laws because "only . . . James" lied (*see* Acme MTD Br. at 15-16) fails to recognize concepts of accomplice and co-conspirator liability, even though the FAC references these precise concepts. *Id*. at ¶ 72.

In *Carney*, the Sixth Circuit found gun sellers' willful blindness to clear red flags of straw purchases sufficient to uphold the dealers' criminal convictions for aiding and abetting false statements by straw buyers under 18 U.S.C. §924(a)(1)(A). *Carney*, 387 F.3d at 448-450, 448 n. 4. If willful blindness to red flags of straw purchases is sufficient to find that gun sellers have constructive knowledge under a "beyond a reasonable doubt" standard, allegations of willful

blindness to red flags of a straw purchase more than satisfy a plausibility pleading standard for constructive knowledge in civil litigation.[5]

Acme also claims that it cannot plausibly have covered up James' crimes, or participated in James's unlawful provision of a firearm to a minor. *See* Acme MTD Br. at 13-17, 14 n. 42. However, by falsely certifying a sale as lawful when it knew it was not, Acme obscured evidence of James's crimes. *See* FAC ¶¶ 59-103 (referencing 18 U.S.C. §§ 3, 4). By knowingly cooperating with James in providing E.C., a prohibited minor, with a firearm, Acme similarly acted as an accomplice/co-conspirator in relation to violation of the age restriction in 18 U.S.C. §922(x). *See* FAC ¶¶ 59-103.

Acme further contends that it cannot have violated 18 U.S.C. § 922(t) because it ran a background check on James. Acme MTD Br. at 16. But the Supreme Court has held that "§922, in regulating licensed dealers' gun sales, looks through the straw to the actual buyer" and requires the background check to be run

[5] *See also Chiapperini*, 13 N.Y.S.3d at 787 (finding the complaint plausibly alleged the dealer was an accomplice to the buyer's false statements on a firearms transaction form); *accord Williams*, 100 A.D.3d at 150 ("a licensed dealer may be criminally liable for aiding and abetting a gun purchaser's making of false statements"); *Corporan*, 2016 U.S. Dist. LEXIS 93307 at *9 ("A dealer violates the Gun Control Act . . . if the dealer transfers a firearm based upon information in Form 4473 that he knows or has reason to believe is false.") (referencing 18 U.S.C. §§ 922(m), 924(a)(1)(A)); *see also Coxie,* No. 2018-CP-42-04297 (allowing claims to proceed past PLCAA on similar alleged statutory violations).

on that person and not the straw purchaser. *Abramski v. United States*, 573 U.S. 169, 179-81 (2014).

The FAC also alleges that Acme violated Michigan's general public nuisance statute (M.C.L.S. § 600.3801) to establish a predicate violation. *See* FAC ¶¶ 59-103. Acme relies on *Ileto v. Glock*, 565 F.3d 1126 (9th Cir. 2009) – which found California's general (*i.e.* not firearms-specific) public nuisance statute not to be "applicable" to the sale or marketing of firearms within the meaning of 15 U.S.C. § 7903(5)(A)(iii). Acme MTD Br. at 12-13. *Ileto*, in addition to not being controlling here, wrongly construed "applicable" in an overly narrow manner. This Court should, instead, follow the accurate construction of this term adopted by the Indiana Court of Appeals in *Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422 (Ind. App. 2007) *transfer denied* 915 N.E.3d 978 (Ind. 2009) – which found that such a general nuisance statute was "applicable." A similar approach applies to rebut Acme's claims that 18 U.S.C. §§ 3, 4 cannot constitute predicate violations. Acme MTD Br. at 14. However, this Court need not resolve the issue of the correct construction of "applicable" because the FAC also credibly alleges Acme's knowing violation of a number of firearms-specific statutes.[6]

[6] *See infra* at section I.A.3 for how satisfaction of the predicate exception due to allegations of violations of firearms-specific statutes allows even general negligence and/or nuisance claims that might not independently fall within an exception.

As a final point, Acme misleadingly cites to several federal cases to create the false impression that federal courts have uniformly applied the plausibility pleading standard to dismiss claims under PLCAA. *See* Acme MTD Br. at 11-12. Acme focuses on inapposite non-straw purchase cases and cases where the predicate exception was not satisfied.[7] Acme ignores the many federal cases that have denied dismissal of relevant claims where a plaintiff has, as here, alleged a predicate violation – including the only federal case known to Plaintiffs that involved allegations of a dealer knowingly completing a straw purchase (*Corporan*, 2016 U.S. Dist. LEXIS 93307).[8]

**2. Plaintiffs Have Plausibly Alleged that Acme Negligently Entrusted the Acme Gun**

15 U.S.C. § 7903(5)(A)(ii) permits an "action brought against a seller for negligent entrustment or negligence per se." §7903(5)(B) identifies "negligent entrustment" as the "supplying of a qualified product by a seller for use

[7] The one partial exception is *Bannerman v. Mt. State Pawn*, 2010 U.S. Dist. LEXIS 145292 (N.D.W.V. Nov. 5, 2010)—which found a predicate violation established in a non-straw purchase scenario. However, *Bannerman* dismissed the case *not* on PLCAA grounds but, instead, because plaintiffs failed to state a substantive claim where they argued that violation of a federal statute and/or satisfaction of PLCAA's predicate exception could, in and of themselves, be the foundation for a cause of action. *Bannerman*, 2010 U.S. Dist. LEXIS 145292 at 12-13, 22-24. Here, in contrast, Plaintiffs' claims are founded on Michigan tort law.

[8] *See also Prescott v. Slide Fire Solutions, LP*, 410 F.Supp.3d 1123 (D. Nev. 2019); *Parsons v. Colt's Mfg. Co.*, 2020 U.S. Dist. LEXIS 65341 (D. Nev. April 10, 2020) (attached as **Ex. 6**); *Brady v. Walmart, Inc.* 2022 U.S. Dist. LEXIS 135143 (D. Md. Jul. 28, 2022) (attached as **Ex. 7**).

by another person when the seller knows, or reasonably should know, the person to whom the product is supplied is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others." § 7903(5)(B) allows any negligent entrustment claim 1) valid under Michigan state law and 2) that meets the description in §7903(5)(B) to satisfy §7903(5)(A)(ii).

Here, both requirements are satisfied. Michigan recognizes that a party who provides a firearm to a party showing a propensity to misuse it may be held liable for negligent entrustment. *Haddad*, 2006 Mich. App. LEXIS 74. The court, there, in allowing such a claim, emphasized that "[t]o sustain a cause of action for negligent entrustment a plaintiff must prove that defendant knew or should have known of the unreasonable risk propensities of the entrustee" to misuse a dangerous instrument. *Id*. at *6. Although noting that an entrustee's youth is not sufficient, on its own, to sustain a cause of action for negligent entrustment, the court there found that the entrustee's "age . . . [was] sufficient to place defendant on notice that the handgun could be misused or handled in an unsafe manner" such that the entrustor could be viewed as required to take "sufficient precautions before entrusting the handgun" or to conduct "further investigation" regarding the propensities of the shooter. *Id*. at *7-*9. *Haddad* also notes that Michigan follows the Restatement (Second) of Torts, §390 (*Haddad*, 2006 Mich. App. LEXIS 74 at *5-6), which states that:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Restatement (Second) of Torts, § 390.

Here, if this Court properly construes the FAC favorably (*Vinny's*, 207 F. Supp. 3d at 748), Plaintiffs allege both that Acme entrusted the Acme gun: 1) to E.C. through a "third person" (James); and/or 2) directly to James despite actual or constructive knowledge that both potential entrustees were displaying a propensity to misuse the firearm in a dangerous manner and fell into a class of dangerous individuals barred by law from owning guns (E.C. was a minor while James a straw purchaser). FAC ¶¶ 59-103. In recognition of the dangers to public safety when straw purchasers obtain firearms, Congress recently incorporated the term "straw purchase" into the U.S. Code and added one or more specifically enumerated offense relating to straw purchasing even though other provisions also apply. 18 U.S.C. §§ 932-934.

Acme appears to misread § 7903(5)(B) as requiring that the entrustee must be the one who discharges the firearm. *See* Acme MTD Br. at 23-25. Here, the FAC alleges that Acme supplied the Acme gun to E.C. (who did discharge it) through James. However, even if one views James as the entrustee, the statute does not, in fact, require that the entrustee discharge the firearm. Instead, § 7903(5)(B)

includes Plaintiffs' negligent entrustment claim provided that "the person to whom the product is supplied" "use[d]" the product in a dangerous manner.

The Supreme Court has made clear that the "use" of a firearm extends beyond the discharge of a gun. *Smith v. United States*, 508 U.S. 223, 228-29 (1993) ("use" of a firearm broadly means "'to employ" or "to derive service from," including, there, an attempt to barter a gun for narcotics) (citation omitted). *Englund* also found that "use" as in §7903(5)(B) could "include transfer of the weapon." *Englund*, No. 16-CV-00598 at 7-8; **Ex. 2**. Similarly, in *Coxie*, No. 2018-CP-42-04297, the court considered this precise argument as to whether PLCAA required that the direct entrustee be the one to fire the gun (*Coxie*, 2018-CP-42-04297, MTD Opp. Br. at 29 - 31 (attached as **Ex. 4**)) and properly rejected it. *See Coxie*, 2018-CP-42-04297.

Other PLCAA straw purchase cases have also allowed negligent entrustment claims where the dealer first provided a gun to a straw purchaser and not the ultimate shooter. *Chiapperini*, 13 N.Y.S.3d 777; *Fox*, No. 2014-24619. Finally, contrary to Acme's assertions, the FAC alleges how a straw purchaser's foreseeable use of a gun via transfer to another party (often a juvenile) endangers public safety. *Compare* Acme MTD Br. at 24-25 *with* FAC at ¶¶ 65-66, 73. James's foreseeable transfer of the Acme gun to E.C. constitutes a dangerous "use" that satisfies the PLCAA definition.

The cases Acme cites in its argument, are inapplicable or actually support Plaintiffs. First, Acme incorrectly presents *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262 (Conn. 2019) *cert denied sub nom. Remington Arms Co., LLC v. Soto*, 140 S. Ct. 513 (2019) as suggesting that PLCAA imposes a "stricter requirement" than the common law in terms of the entrustee being the shooter. *See* Acme MTD Br. at 23-24. *Soto* actually held that because a state law negligent entrustment claim failed, the court "need not consider whether negligent entrustment claims must meet stricter requirements . . . to satisfy the federal . . . exception." *Soto*, 202 A.3d at 278-79.

*Delana v. CED Sales, Inc.*, 486 S.W.3d 316 (Mo. 2016) (cited in Acme MTD at 23) similarly did not find that PLCAA imposes an additional restriction, beyond state law, that the direct entrustee be the one to pull the trigger. Further, *Delana,* in fact, *allowed* a negligent entrustment claim. *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216 (D. Colo. 2015) (cited in Acme MTD Br. at 19) was a case where there was no face-to-face contact between the gun buyer and seller. *Midgette v. Wal-Mart Stores, Inc.*, 317 F. Supp. 2d 550 (E.D. Pa. 2004) (cited in Acme MTD Br. at 19) was a pre-PLCAA case involving the sale of ammunition, not the straw purchase of a firearm. Meanwhile, *Buczkowski v. McKay,* 490 N.W.2d 330 (Mich. 1992) (cited in Acme MTD Br. at 20) stated that "beyond the class defined by statute, there is no duty owed by the retailer to discover other

potential incompetent persons or foresee the criminal acts of others absent special circumstances." *Id*. at 335. Here, both E.C. and James fell into one or more legislatively prohibited classes (a minor and a straw purchaser) and, further, that there were "special circumstances" illustrating those facts. *See* FAC ¶¶ 59-103.

Additionally, *Chiapperini* rebuts Acme's apparent contention that it was allowed to assume that James would appropriately supervise E.C. so as to comply with Michigan law. *See* Acme MTD Br. at 20 (citing M.C.L.S § 750.234f). In *Chiapperini*, the gun seller tried a similar defense and argued that various red flags of a straw purchase were "just as capable of an innocuous interpretation as they are a criminal one" such that it could not be found to have known that it was negligently entrusting a firearm to an unlawful possessor (there, a felon using a straw purchaser). *See* 13 N.Y.S.3d at 89-790 (internal quotation omitted). The court properly rejected this argument and emphasized that "plaintiffs are entitled to the criminal inference to permit its pleading to withstand a dismissal." *Chiapperini*, 13 N.Y.S.3d at 790. Plaintiffs here are similarly entitled to the inference that Acme knew it was illicitly arming a prohibited possessor (E.C., a minor) utilizing a straw buyer (James) and that James would not supervise E.C. *See id*.; *Vinny's*, 207 F. Supp. 3d at 748.

Finally, Acme cites two Sixth Circuit cases to suggest that Plaintiffs are blocked from discovery in terms of trying to develop, with greater specificity, the

precise nature of the red flags. Acme MTD Br. at 18 (citing *New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046, 1051 (6th Cir. 2011) and *16630 Southfield Ltd. P'ship v. Flagstar Bank*, 727 F.3d 502 (6th Cir. 2013)). Neither case supports Acme's position. Both cases dismissed claims arising from alleged violations of federal anti-discrimination statutes where the plaintiffs could not, with certainty, put forward fundamental facts establishing that any discrimination had even occurred. *See New Albany*, 650 F.3d at 1050-51; *16630 Southfield*, 727 F.3d at 505-06. Neither addresses the level of specificity that a plaintiff must meet in federal court when alleging circumstantial facts to support the conclusion that a tort defendant has a culpable *mens rea*.

### 3. Where Satisfied, PLCAA's Predicate Exception or Negligent Entrustment Exception Allow All Individual Claims Within an "Action" to Proceed

An overwhelming consensus of courts have recognized that, consistent with the predicate exception's broad allowance of an "action" where there is a knowing violation of law (15 U.S.C. § 7903(5)(A)(iii)), PLCAA allows all claims within a case to survive if this exception is satisfied – including individual claims sounding

in general negligence or nuisance, which might not independently fall within an exception.[9] Acme's contrary contention that PLCAA automatically bars general negligence and nuisance claims is wrong. In all the cases presented by Acme for this position, the predicate exception was not satisfied. Acme MTD Br. at 10-13. None of these cases address whether PLCAA bars general negligence and nuisance claims where, as here, and in the numerous cases cited above, there are allegations which do satisfy the predicate exception.

PLCAA's exception for negligent entrustment in §7903(5)(A)(ii) contains similar language as §7903(5)(A)(iii) in terms of allowing an entire "action" where it is satisfied.[10] *Chiapperini*, while referencing the negligent entrustment exception, correctly held that "as long as one PLCAA exception applies to one claim the entire action continues." 13 N.Y.S.3d at 785-87.

---

[9] *See, e.g., Englund*, 2017 Ore. Cir. LEXIS 3 at *11-12 (Jun. 30, 2017) ("the predicate exception's broad language provides that an entire 'action' survives – including all alleged claims"); *Corporan*, 2016 U.S. Dist. LEXIS 93307, *13 n. 4 ("because the court finds the predicate exception applicable to this action, it declines to engage in the claim-by-claim analysis advanced by defendants"); *Fox*, No. 2014-24619; *Coxie*, No. 2018-CP-42-04297, *Chiapperini*, 13 N.Y.S.3d 777; *City of Gary*, 875 N.E.2d 422 (Ind. App. 2007); *Williams*, 100 A.D.3d 143; *Prescott*, 410 F.Supp.3d 1123; *but see Goldstein v. Earnest*, No. 37-2020-00016638-CU-PO-CTL, 5 (Ca. Super. Ct. Jul. 2, 2021) *pet. for writ denied* (Ca. Ct. App. Sep. 14, 2021) (attached as **Ex. 8**). *Goldstein* incorrectly found that each claim must fall within a PLCAA exception, but allowed nuisance and negligence claims because the misconduct forming the basis for both claims included knowing statutory violations. *Id*. at 6-7.

[10] PLCAA's negligence per se exception in §7903(5)(A)(ii) also allows the whole "action" and is satisfied for the same reasons as the predicate exception.

### B. Plaintiffs' Case Does Not Fall Within the General Definition of a Qualified Civil Liability Action

Supreme Court federalism precedent and canons of statutory construction require construing PLCAA to minimize federal intrusion into Michigan's traditional authority to make and apply tort law.[11] *See Gregory*, 501 U.S. 452; *Bond*, 134 S. Ct. 2077; *Cipollone*, 505 U.S. 504. This Court must "not [be] looking for a plain statement that [common law claims like Plaintiffs'] are excluded" from the coverage of PLCAA's bar, but instead, should "not read [PLCAA] to [bar common law claims like Plaintiffs'] unless Congress has made it clear that [they] are *included*." *See Gregory*, 501 U.S. at 467 (emphasis in original). Even when a statute's "express language" mandates some preemption, the "presumption [against preemption] reinforces the appropriateness of a narrow reading" of the "scope." *Cipollone*, 505 U.S. at 516-18; *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (discussing *Cipollone*) (emphasis omitted).

PLCAA lacks the requisite clear statement of intent to include claims like Plaintiffs' within the scope of the general definition of prohibited qualified civil liability actions in §7903(5)(A). PLCAA never states that tort claims against gun industry actors are barred. Instead, it provides a general definition of

[11] Here, although this is a federal Court, this Court is acting to enforce Michigan tort law and any obstacle to application of Michigan tort law raises the federalism concerns discussed in the cases in this section.

presumptively prohibited qualified civil liability actions against licensed gun companies for harm "resulting from the criminal or unlawful misuse" of a gun by a third party. 15 U.S.C. § 7903(5)(A). "Resulting from" is undefined and ambiguous, and should be read consistently with PLCAA's Purposes and Findings, which express an intent to only "prohibit causes of action … for the harm **solely** caused by the criminal or unlawful misuse of firearm products." 15 U.S.C. §7901(b)(1) (emphasis added); *see also* §7901(a)(6) (similar "solely caused" language).

Only a reading interpreting "resulting from" to require sole causation (*i.e.*, allowing claims to proceed, where, as here, *both* gun industry misconduct and third-party misconduct contribute to a plaintiff's harm)[12] complies with "[t]he primary rule of statutory construction," which is "to give effect to the intention of the legislature." *Rodgers v. United States*, 185 U.S. 83, 86 (1902)*; see also Conroy v. Aniskoff*, 507 U.S. 511, 515 (1993) (statute must "be read as a whole") (internal quotation omitted). "Solely" was added to the first Purpose as one of the few changes made to a version of PLCAA that failed to pass. *Compare* S. 1805, 108th Cong. (2003) (attached as **Ex. 9**) *with* S. 397, 109th Cong. (2005) (attached as **Ex. 10**). No word should be read as "superfluous" (*see Astoria Fed. Sav. & Loan Ass'n*

---

[12] To clarify, 1) Acme's negligent and unlawful sale of the Acme gun and 2) the E.C.'s criminal acts were both causes of Plaintiffs' harm.

*v. Solimino*, 501 U.S. 104, 112 (1991)) – especially not one that appears critical to PLCAA's passage.[13]

## II. <u>In the Alternative, PLCAA is Unconstitutional</u>

### A. PLCAA Exceeds Congress's Enumerated Powers

The Commerce Clause only authorizes Congress to regulate existing "commercial activity" –not to force passive actors not engaged in commerce to bear costs of misconduct that would normally be imposed on the firearms industry. *See, Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 558 (2012). Further, as the Supreme Court recognized in *Murphy v. NCAA*, 138 S. Ct. 1461 (2018), "every form of [permissible] preemption [under the Commerce Clause] is based on a Federal law that regulates the conduct of private actors, not the States" and state lawmaking functions are not sufficiently commercial activities to fall under the Commerce Clause. *See id*. at 1481; *see also id*. at 1485 (J. Thomas, concurring).

PLCAA only regulates passive non-market participants like the Plaintiffs and state lawmakers. It bars certain lawsuits by private plaintiffs, and requires states to

[13] Plaintiffs' interpretation that PLCAA allows claims based, at least in part, on gun industry misconduct is also consistent with PLCAA's legislative history. PLCAA's chief sponsor, Sen. Larry Craig, specifically stated that PLCAA "does not protect firearms . . . manufacturers, sellers, or trade associations from . . . lawsuits based on their own negligence or criminal conduct." 151 Cong. Rec. S9061 (Jul. 27, 2005) (attached as **Ex. 11**).

utilize their legislatures, rather than their judiciaries if they wish to impose liability standards on gun companies. *See* 15 U.S.C. §7903(5)(A)(iii). PLCAA is not a permissible preemption statute and does not target activities within the ambit of the Commerce Clause or any other enumerated federal power.

Four of the nine judges of the Superior Court of Pennsylvania, sitting *en banc*, recently agreed that PLCAA exceeds Congress's powers. *Gustafson*, 2022 PA Super 140 (J. Kunselman) (PLCAA would apply to block a product liability claim if a valid statute, but was unconstitutional as so applied) (joined by two other judges); *Gustafson*, 2022 PA Super 140 (J. Bender) (PLCAA did not apply but would be unconstitutional if so applied).[14]

### B. PLCAA Violates the Tenth Amendment

The Tenth Amendment limits federal intrusion on state sovereignty, including by prohibiting "commandeering."[15] PLCAA violates the anti-commandeering rule by commanding states to not enforce judicially-created liability standards against the firearms industry unless they are codified into

[14] A fifth judge found PLCAA constitutional but inapplicable, thus providing a five-judge majority finding either that PLCAA did not apply or was unconstitutional.

[15] The federalism protections enshrined in the Tenth Amendment are broader than a prohibition on "commandeering." *See New York v. United States*, 505 U.S. 144, 188 (1992).

statute. *See* §7903(5)(A)(iii). The "Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions." *New York,* 505 U.S. at 162. "[W]hether the law of the State shall be declared by its Legislature in a statute or by its highest court in a *decision is not a matter of federal concern*." *Erie R.R. v. Tompkins***,** 304 U.S. 64, 78 (1938) (emphasis added).[16]

### C. PLCAA Violates Due Process

"Where there is a legal right, there is also a legal remedy by suit or action at law." *Marbury v. Madison*, 5 U.S. 137, 163 (1803) (internal quotation omitted). When the Supreme Court has held that Congress may limit or eliminate certain claims, Congress has provided a reasonably adequate alternative remedy. *See Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59 (1978) ("[t]h[e] panoply of remedies and guarantees is at the least a reasonably just substitute for the common-law rights replaced by [the act]"). PLCAA violates due process because it deprives victims of gun violence of any reasonably adequate remedy. *City of Gary v. Smith & Wesson Corp.*, No. 45D05-0005-CT-00243, 4 (Ind. Super. Ct.

[16] PLCAA also purports to define one or more substantive rules of common law in violation of the Tenth Amendment. "Congress has no power to declare substantive rules of common law applicable in a State." *Erie*, 304 U.S. at 78. The same four-judge bloc in *Gustafson* identified above recently acknowledged that PLCAA violates the Tenth Amendment.

Oct. 23, 2006) (attached as **Ex. 12**); *cf. Lopez v. Badger Guns, Inc.*, No. 10-cv-18530, 24:14-25:6 (Wis. Cir. Ct. Mar. 24, 2014) (attached as **Ex. 13**).

### D. PLCAA Violates Equal Protection

To apply PLCAA to bar recovery for gun violence victims in Michigan while allowing recovery for otherwise similarly-situated victims in other states which have codified gun liability statutes that list the same elements as the judicially-created standards would violate equal protection principles. *See* 15 U.S.C. § 7903(5)(A)(iii). Such discrimination cannot survive even rational basis review. *See McBride v. General Motors Corp.*, 737 F. Supp. 1563 (M.D. Ga. 1990); *City of Cleburne v. Cleburne Living Ctr*., 473 U.S. 432 (1985).

## CONCLUSION

For all the above reasons, Acme's motion should be denied.

Respectfully Submitted,


| | |
|---|---|
| /s/ Matthew L. Turner<br>Matthew L. Turner (P48706)<br>Lisa M. Esser (P70628)<br>Sommers Schwartz, P.C.<br>One Towne Square, Suite 1700<br>Southfield, MI 48076<br>T: (248) 355-0300<br>F: (248) 936-2158<br>mturner@sommerspc.com<br>lesser@sommerspc.com | /s/ Erin C. Davis<br>Erin C. Davis<br>Robert Cross<br>Brady<br>840 Street NE, Suite 400<br>Washington DC 20002<br>(202) 370-8106<br>edavis@bradyunited.org<br>rcross@bradyunited.org |


Dated: January 25, 2023

**CERTIFICATE OF SERVICE**

I certify that on January 25, 2023, I electronically filed the forgoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Matthew L. Turner*
mturner@sommerspc.com