**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

Kelly L. Stephens
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: March 20, 2025

Ms. Danielle Young Canepa
2391 Ayrshire Drive
Ann Arbor, MI 48105

Mr. Kevin M. Carlson
Pitt, McGehee, Palmer & Rivers
117 W. Fourth Street
Suite 200
Royal Oak, MI 48067

Mr. Kenneth Bennett Chapie
Giarmarco, Mullins & Horton
101 W. Big Beaver Road
Tenth Floor, Columbia Center
Troy, MI 48084

Mr. Christopher Patrick Desmond
Ven Johnson Law
535 Griswold Street
Suite 2600
Detroit, MI 48226

Ms. Lisa Michelle Esser
Sommers Schwartz
One Towne Square
Suite 1700
Southfield, MI 48076

Ms. Milica Filipovic
Fieger Law
19390 W. Ten Mile Road
Southfield, MI 48075

Mr. Todd F. Flood
Flood Law
155 W. Congress
Suite 350
Detroit, MI 48226

Ms. Deborah L. Gordon
Law Offices
33 Bloomfield Hills Parkway
Suite 220
Bloomfield Hills, MI 48304

Mr. Mark Granzotto
Granzotto Law
2684 Eleven Mile Road
Suite 100
Berkley, MI 48072

Mr. Vernon R. Johnson
Law Offices
535 Griswold Street
Suite 2600
Detroit, MI 48226

Mr. Robert G. Kamenec
Fieger Law
19390 W. Ten Mile Road
Southfield, MI 48075

Mr. Matthew D. Klakulak
Giroux Pappas Trial Attorneys
31700 Middlebelt Road
Suite 125
Farmington Hills, MI 48334-2300

Mr. Andrew John Laurila
Giroux Pappas Trial Attorneys
31700 Middlebelt Road
Suite 125
Farmington Hills, MI 48334-2300

Mr. John M. Malone
Sommers Schwartz
One Towne Square
Suite 1700
Southfield, MI 48076

Mr. John Louis Miller
Giarmarco, Mullins & Horton
101 W. Big Beaver Road
Tenth Floor, Columbia Center
Troy, MI 48084

Mr. Wolfgang Mueller
Mueller Law Firm
41850 W. Eleven Mile Road
Suite 101
Novi, MI 48375

Mr. Timothy John Mullins
Giarmarco, Mullins & Horton
101 W. Big Beaver Road
Tenth Floor, Columbia Center
Troy, MI 48084

Mr. Michael L. Pitt
Pitt, McGehee, Palmer & Rivers
117 W. Fourth Street
Suite 200
Royal Oak, MI 48067

Ms. Beth M. Rivers
Pitt, McGehee, Palmer & Rivers
117 W. Fourth Street
Suite 200
Royal Oak, MI 48067

Ms. Annabel Frances Shea
Giarmarco, Mullins & Horton
101 W. Big Beaver Road
Tenth Floor, Columbia Center
Troy, MI 48084

Ms. Elizabeth Marzotto Taylor
Law Offices
33 Bloomfield Hills Parkway
Suite 220
Bloomfield Hills, MI 48304

Ms. Sarah Gordon Thomas
33 Bloomfield Hills Parkway
Suite 220
Bloomfield Hills, MI 48304

Mr. Matthew L. Turner
Sommers Schwartz
One Towne Square
Suite 1700
Southfield, MI 48076

Re: Case Nos. 23-1483/1484/1487/1489/1490/1491/1492/1493/1496/1560/1561/1563/1564/1565, *Jeffrey Franz, et al v. Oxford Comm School District, et al*
Originating Case No. : 2:21-cv-12871

Dear Counsel,

The court today announced its decision in the above-styled cases.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Kelly L. Stephens, Clerk

Cathryn Lovely
Deputy Clerk

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0065p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

JEFFREY FRANZ, et al. (23-1483/1563); STEVE ST. JULIANA, et al. (23-1487/1561); WILLIAM MYRE, et al. (23-1489/1565); KYLIE OSSEGE (23-1491/1564); MATTHEW MUELLER, et al. (23-1493/1560),

*Plaintiffs-Appellees/Cross-Appellants*,

NICHOLETTE ASCIUTTO, et al. (23-1484); NICOLE BEAUSOLEIL (23-1490); SANDRA A. CUNNINGHAM, et al. (23-1492); JARROD WATSON, et al. (23-1496),

*Plaintiffs-Appellees*,

*v*.

OXFORD COMMUNITY SCHOOL DISTRICT, et al.

*Defendants*,

NICHOLAS EJAK; SHAWN HOPKINS,

*Defendants-Appellants/Cross-Appellees*,
*Defendants-Appellants*.

Nos. 23-1483 /1484 /1487 /1489 /1490 /1491 /1492 /1493 /1496 /1560 /1561/ 1563/ 1564/ 1565

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.

Nos. 21-cv-12871; 22-cv-10805; 22-cv-11113; 22-cv-11250; 22-cv-11251; 22-cv-11398; 22-cv-11448; 22-cv-11959—Mark A. Goldsmith, District Judge.

Argued: December 11, 2024

Decided and Filed: March 20, 2025

Before: KETHLEDGE, LARSEN, and MATHIS, Circuit Judges.

---

## COUNSEL

**ARGUED:** Kenneth B. Chapie, GIARMARCO, MULLINS & HORTON, P.C., Troy, Michigan, for Nicholas Ejak and Shawn Hopkins. Kevin M. Carlson, PITT, MCGEHEE, PALMER, BONANNI & RIVERS PC, Royal Oak, Michigan, for all Plaintiffs. **ON BRIEF:** Kenneth B. Chapie, Timothy J. Mullins, Annabel F. Shea, GIARMARCO, MULLINS & HORTON, P.C., Troy, Michigan, for Nicholas Ejak and Shawn Hopkins. Kevin M. Carlson, Michael L. Pitt, Beth M. Rivers, Danielle Y. Canepa, PITT, MCGEHEE, PALMER, BONANNI & RIVERS PC, Royal Oak, Michigan, for Steve St. Juliana, et al. Robert G. Kamenec, FIEGER, FIEGER, KENNEY & HARRIGTON, P.C., Southfield, Michigan, for Jeffrey Franz, et al. Andrew J. Laurila, Matthew Klakulak, GIROUX PAPPAS TRIAL ATTORNEYS, P.C., Southfield, Michigan, for Nicholette Asciutto, et al. Christopher Desmond, Ven Johnson, JOHNSON LAW, PLC, for William Myre, et al. Wolfgang Mueller, MUELLER LAW FIRM, Novi, Michigan, for Nicole Beausoleil and Sandra A. Cunningham. Deborah L. Gordon, Elizabeth A. Marzotto Taylor, Sarah Gordon Thomas, DEBORAH GORDON LAW, Bloomfield Hills, Michigan, for Kylie Ossege. Matthew L. Turner, Lisa M. Esser, John M. Malone, SOMMERS SCHWARTZ, P.C., Southfield, Michigan, for Matthew Mueller, et al. Mark Granzotto, MARK GRANZOTTO, P.C., Berkley, Michigan, Todd F. Flood, FLOOD LAW PLC, Detroit, Michigan, for Jarrod Watson, et al.

---

## OPINION

---

KETHLEDGE, Circuit Judge. On November 30, 2021, in Oxford, Michigan, a 15-year-old student took a gun to school and used it to shoot ten students and one teacher. Four students died. The shooter, whom we call E.C., pled guilty to first-degree murder and is now serving a life sentence. His parents are likewise in prison after juries convicted them of manslaughter. Meanwhile, victims of the shooting have brought multiple suits in state court, seeking recovery against school and law-enforcement officials on various theories of tort liability. Many of those suits remain pending.

The consolidated cases here are different. What the plaintiffs assert here "is not a negligence claim, but one sounding in a rare species of one of the narrowest doctrines of constitutional law." *Doe v. Jackson Loc. Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 937 (6th Cir. 2020). For the most part the Constitution sets forth rules for government, both creating (or "constituting") its powers and limiting them. The limitation the plaintiffs invoke here is that of

"due process." And to proceed with those claims, the plaintiffs must allege more than that the school officials in these cases—a counselor and the dean of students—made bad decisions or could have done more to prevent this tragedy. What the plaintiffs must show in these cases, rather, is that the actions of these two defendants were so outrageous, and so callous in their disregard of the danger posed by E.C., as to shock the conscience. The district court held that, with one exception, the plaintiffs had not alleged facts supporting any inference to that effect. We reach that same conclusion across the board—and thus we affirm in part and reverse in part.

## I.

We accept as true the facts alleged in the plaintiffs' complaints. *See Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 382-83 (6th Cir. 2016).

In early November 2021, a student entered a bathroom stall at Oxford High School and found a jar containing a severed bird's head. E.C.'s journal revealed that he had killed the bird and brought it to school in the jar, though school officials were unaware of those facts then. Around this same time, E.C.'s Spanish teacher told a school counselor, Shawn Hopkins, that E.C. seemed "sad." Hopkins offered to talk to E.C., but E.C. declined.

The weekend before the shooting, E.C.'s mother posted a picture of him at a shooting range with a Sig Sauer 9mm semiautomatic handgun—which she called "his new Christmas present." School officials were unaware of that posting. The next Monday—the day before the shooting—an English teacher saw E.C. looking at photos of bullets on his phone. The teacher reported that to Hopkins, and he asked E.C. about the photos. E.C. said guns were a family hobby. That night, E.C. wrote in his journal: "the shooting is tomorrow, I have access to the gun and ammo." On Twitter, he posted, "Now I am become Death, the destroyer of worlds. See you tomorrow Oxford." School officials were unaware of those facts too.

Around 8:30 a.m. the next morning—November 30—another teacher saw E.C. looking at his phone. This time, he was watching videos of shootings. The teacher reported that to Hopkins. Thirty minutes later, a math teacher found a worksheet on which E.C. had sketched a pistol, a person with gunshot wounds, and a bullet. On the same worksheet, E.C. had also written: "blood everywhere"; "My life is useless"; and "The thoughts won't stop help me."

The math teacher promptly alerted dean of students Nicholas Ejak and Hopkins about the worksheet. Within minutes, Hopkins escorted E.C. to the counseling office, while Ejak retrieved E.C.'s backpack from the classroom. Ejak did not look inside the backpack. In the office, E.C. told Hopkins and Ejak that he had been drawing characters from a video game. Hopkins said, "this does not sound like a video game." Hopkins asked E.C. whether he was a threat to himself or others. E.C. replied, "I can see why this looks bad. I'm not going to do anything."

Hopkins then called E.C.'s parents, telling them that he was concerned that E.C. was suicidal, and that they needed to come to the school. They arrived around 10:30 that morning. Hopkins said E.C. needed immediate counseling—that day, if possible. His parents said that was not possible because they needed to go back to work. Then—with E.C. still present—Hopkins told the parents that, if they did not get E.C. counseling within 48 hours, he would call Child Protective Services. E.C.'s mother asked, "are we done?" Hopkins said yes, and the parents left.

After the meeting, Hopkins or Ejak (the record does not make clear which) returned E.C's backpack to him and sent him back to class. During the next two hours, Hopkins confirmed that E.C. had arrived at each of his classes. Shortly after noon, however, E.C. left class and went to the bathroom. There, he removed the Sig Sauer from his backpack, returned to the hallway, and began shooting.

The plaintiffs later brought these suits, claiming the defendants had violated their constitutional rights to due process. The defendants moved for judgment on the pleadings, arguing they were entitled to qualified immunity because (among other grounds) the plaintiffs had not alleged facts showing a constitutional violation. *See* Fed. R. Civ. P. 12(c). The district court largely agreed and dismissed most of the claims in the complaints. But the court held that Hopkins' statement to E.C.'s parents during the meeting—that he would call Child Protective Services if they did not get counseling for E.C. within 48 hours—potentially did support a constitutional claim. The defendants and the plaintiffs, respectively, then brought these appeals and cross-appeals.

II.

To survive a Rule 12(c) motion, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We review de novo the district court's decision under Rule 12(c). *Hudson v. City of Highland Park*, 943 F.3d 792, 798 (6th Cir. 2019).

We have jurisdiction over these interlocutory appeals because the defendants argue they are entitled to qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). To overcome qualified immunity, the plaintiffs must show—on a defendant-by-defendant basis—that the defendant both violated the plaintiffs' constitutional rights and that the law made that violation clear at the time the defendant acted. *Phillips v. Roane Cnty.*, 534 F.3d 531, 538-39, 542 (6th Cir. 2008). The showing necessary to satisfy this standard depends on the stage of the case. *See DiLuzio v. Village of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015). These appeals come to us on the pleadings, so we begin with the question whether the plaintiffs plausibly alleged particular facts supporting an inference that the defendants violated the plaintiffs' constitutional rights.

Here, the plaintiffs invoke the Due Process Clause of the Fourteenth Amendment, which provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. That Clause "imposes a limitation on the State's power to act, not a guarantee of certain minimal levels of safety and security." *Doe*, 954 F.3d at 93 (cleaned up).

Thus, by its terms, the Fourteenth Amendment regulates only the state's actions—not those of private actors. And here the person who deprived the victims of their lives and health was a private actor, E.C. But our circuit (among others) has recognized a theory of "state-created dangers"—according to which, under narrow circumstances, state actors can be liable for harms caused by private actors. *See McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 464 (6th Cir. 2006). Such a claim has three elements. First, a state official must take an "affirmative act" that creates or increases the risk that a victim will be harmed by a private actor. *Doe*, 954 F.3d at 932-33. Second, this risk must pose a "special danger to a specific victim"—meaning a danger, to that victim, greater than the danger to the public generally. *Id.* at 933. Third, the state

official's conduct must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

At the outset, we agree with the district court that two of the putative acts at issue here cannot support liability. First, the plaintiffs argue that the defendants created a danger when, after the meeting in the office, they returned E.C.'s backpack to him and sent him back to class. But those actions put the plaintiffs "in no worse position" than the one in which they would have been had the defendants "not acted at all." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 201 (1989). E.C. had a backpack containing a gun before the meeting, and afterward he had the same backpack containing the same gun. (To avoid any misimpression: nothing in the record here supports an inference that the defendants knew the gun was in the backpack.) Thus, for purposes of this theory, the act of returning the backpack to E.C. did "not satisfy the state-action requirement" because merely "returning someone to the same dangers that existed" before is not enough. *Bukowski v. City of Akron*, 326 F.3d 702, 709 (6th Cir. 2003).

The same is true of the second of the putative acts the plaintiffs cite—namely that Hopkins and Ejak "concealed" from other school officials the risk that E.C. might shoot other students in the school. (We set to one side the question whether the defendants perceived *that* risk—as opposed to the risk that E.C. would harm himself.) "Concealed" is a loaded term here. True, on the facts alleged, the defendants failed to tell other officials about a risk that E.C. might harm others. But failures to act usually are not affirmative acts for purposes of this theory. *Stiles, ex rel. D.S. v. Grainger Cnty.*, 819 F.3d 834, 855 (6th Cir. 2016). And the plaintiffs point to nothing in this record that plausibly supports an inference that Hopkins or Ejak sought to cover up any risk of harm. Hence this omission cannot support liability either. *See generally Est. of Romain v. City of Grosse Pointe Farms*, 935 F.3d 485, 492 (6th Cir. 2019).

The primary question here, instead, is whether Hopkins' warning to E.C.'s parents—that he would call Child Protective Services if they did not get help for their son within 48 hours—satisfied the elements of this theory. The district court thought that warning (made in E.C.'s presence) was an affirmative act because it "increased the risk that a mentally unstable teenager" would harm other students. Op. at 14. One could debate that point; but less debatable, in our view, is whether that warning was "so outrageous" as to violate due process.

When—as was likely the case here—a state official can reflect before he acts, he violates due process when he perceives a "substantial risk of serious harm" and then responds to it in "a manner demonstrating reckless or callous indifference" toward the plaintiff's rights. *Doe*, 954 F.3d at 933-34. Here, the defendants' actions (as alleged in the complaint) show they perceived a serious risk: they summoned E.C.'s parents for an urgent meeting, insisted that he receive counseling within 48 hours, and said they would call Child Protective Services if he did not. (We again set to one side whether the risk they perceived was the risk that materialized.) But those same actions show that Hopkins and Ejak displayed the opposite of callous indifference toward the risk they perceived. That is especially true of the very act on which the plaintiffs would ground liability: namely, Hopkins' demand that E.C.'s parents get him counseling withing 48 hours. Hopkins made that demand to mitigate risk, not to increase it; and his demand was indisputably made for "a legitimate governmental purpose," which all but excludes a finding that it was "conscience shocking." *Id*. at 934. True, as the plaintiffs emphasize, this case comes to us on the pleadings rather than on summary judgment. But even taking their alleged facts as true, we see nothing in this record that supports an inference that Hopkins or Ejak took any action that shocks the conscience. In substance the plaintiffs' claims sound in tort, not in federal constitutional law. Thus, in these cases, their claims must be dismissed.

* * *

The district court's May 12, 2023, order is affirmed in part and reversed in part; and we remand these cases with instructions to dismiss them.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 23-1483/1484/1487/1489/1490/1491/1492/1493/1496/1560/1561/1563/1564/1565

**FILED**
Mar 20, 2025
KELLY L. STEPHENS, Clerk

JEFFREY FRANZ, et al. (23-1483/1563); STEVE ST. JULIANA, et al. (23-1487/1561); WILLIAM MYRE, et al. (23-1489/1565); KYLIE OSSEGE (23-1491/1564); MATTHEW MUELLER, et al. (23-1493/1560),

Plaintiffs - Appellees / Cross - Appellants,

NICHOLETTE ASCIUTTO, et al. (23-1484); NICOLE BEAUSOLEIL (23-1490); SANDRA A. CUNNINGHAM, et al. (23-1492); JARROD WATSON et al. (23-1496),

Plaintiffs - Appellees,

v.

OXFORD COMMUNITY SCHOOL DISTRICT, et al.

Defendants,

NICHOLAS EJAK; SHAWN HOPKINS,

Defendants - Appellants / Cross - Appellees,
Defendants - Appellants.

Before: KETHLEDGE, LARSEN, and MATHIS, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED IN PART and REVERSED IN PART.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens

Kelly L. Stephens, Clerk